UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL F., SHAN O., and
GEOFFREY F.,

      Plaintiffs,

      v.

CALIFORNIA PHYSICIANS' SERVICE
d/b/a BLUE SHIELD OF CALIFORNIA,
et al.,

      Defendants.
_____/

No. C 09-2037 PJH

**ORDER DENYING MOTION
TO DISMISS**

      The motion of defendant California Physicians' Service d/b/a Blue Shield of California ("Blue Shield") to dismiss the above-entitled action came on for hearing before this court on August 5, 2009. Plaintiffs appeared by their counsel Brian King and David M. Lilienstein, and Blue Shield appeared by its counsel Craig. S. Bloomgarden and Carol Hu. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion.

**BACKGROUND**

      This is a case filed as a proposed class action under the Employment Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs challenge Blue Shield's practice of excluding coverage for residential treatment services for mental health conditions. The proposed class is the group of individuals and entities who have been denied coverage for residential treatment services for mental health conditions under Blue Shield group or individual health insurance policies.

      Plaintiffs Daniel F. ("Daniel") and Shan O. ("Shan") are the parents of plaintiff Geoffrey F. ("Geoffrey"). Daniel and Shan are employed by the Ogdemli/Feldman Design Group ("Ogdemli"). During the relevant period they were participants in defendant

Ogdemli/Feldman Design Group Benefit Plan ("the Plan"), and Geoffrey was a beneficiary of the Plan.

The Plan was funded through a group health policy issued by Blue Shield. During the period in question, the Plan was governed by Group Health Service Contracts between Blue Shield and Ogdemli, effective August 1, 2006 to July 31, 2007, and August 1, 2007, to July 31, 2008 ("the Policies").

Daniel and Shan adopted Geoffrey when he was 13 years old. Geoffrey was an abused child, and was admitted for acute inpatient psychiatric treatment several times prior to his adoption. In April 2007, Geoffrey was admitted to a wilderness therapy program. Following his discharge from that program, he was admitted to Island View Residential Treatment Center ("IVRTC") in the State of Utah on May 24, 2007. He was 17 years old at the time. He remained at IVRTC until February 27, 2008.

According to the complaint, IVRTC is a "residential treatment facility" licensed by the State of Utah to provide inpatient mental health services. Cplt ¶ 18. Plaintiffs assert that "residential treatment" is "an inpatient level of care that falls between acute care hospitalization and intensive outpatient treatment where the patient is treated during the day and then returns home for the evening and night." Cplt ¶ 21. They allege further that "residential treatment" is sometimes referred to as "partial hospitalization" or "partial hospital services." Cplt ¶ 22.

The Plan excludes coverage for any residential mental health treatment provided to its insureds (though it covers both acute care hospitalization and outpatient treatment). IVRTC (which is a Blue Shield preferred provider) submitted claims for charges associated with Geoffrey's treatment. Blue Shield denied the claims based on its exclusion of coverage for residential treatment.

IVRTC wrote Blue Shield on January 8, 2008, to appeal its denial of the coverage for Geoffrey. Following some exchange of correspondence, Blue Shield advised IVRTC on October 30, 2008 that it would consider an appeal only if it came from the member (not the provider). Plaintiffs claim that Blue Shield's assertion that it would not consider an appeal

from a provider has no basis under ERISA and violates ERISA's claims processing regulations.

Plaintiffs filed the present action on May 8, 2009. Plaintiffs allege that they "have exhausted their pre-litigation appeal obligations," but also assert that "[a]lternatively, the failure of Blue Shield to comply with the requirements of ERISA's claim procedure regulations excuse the [p]laintiffs from any failure to comply with pre-litigation appeal requirements," and "any additional pre-litigation appeal efforts by the plaintiffs would be futile." Cplt ¶ 58.

In the complaint, plaintiffs allege that the practice of excluding coverage for residential treatment services involving mental health conditions violates the terms of the Policies and the requirements of California Health and Safety Code § 1374.72 ("the Parity Act")[1] and California Insurance Code § 10144.5, which mandate coverage for mental health treatment of seriously emotionally disturbed ("SED") children and adolescents. Plaintiffs contend that Geoffrey met the criteria for an SED child under California law at the time of the events alleged in the complaint.

Plaintiffs assert two causes of action. In the first cause of action, they allege that Blue Shield's refusal to provide any coverage for residential treatment of mental health conditions violates the terms of the Policies providing coverage for appropriate medically necessary treatment for mental health conditions that accord with the requirements of California insurance law.[2]

In the second cause of action, plaintiffs seek a judicial declaration that Blue Shield's practice of denying coverage for residential treatment services violates the requirements of ERISA and the terms of the Policies, and an order enjoining Blue Shield from excluding

---

[1] Section 1374.72 is part of the Knox-Keene Health Care Service Plan Act, Cal. Health & Safety Code §§ 1340, et seq., which governs Blue Shield as a health care service plan. Section 1374.72 requires health care service plans to cover mental health on a par with coverage for other medical conditions.

[2] The first cause of action is not pled as a claim for denial of benefits under ERISA, although plaintiffs acknowledge that "[t]he Contract is governed by ERISA." Cplt ¶ 79.

3

coverage for residential treatment services.

Blue Shield now seeks an order dismissing the complaint for failure to state a claim.

## DISCUSSION

A.  Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (9th Cir. 2009).

B.  Blue Shield's Motion

Blue Shield argues that the claims asserted against it should be dismissed because plaintiffs cannot state a claim that denial of coverage violated the terms of the Policies, and

4

because the Parity Act does not mandate coverage for residential treatment services as a matter of law.

### 1. Whether denial of coverage violated the terms of the Policies

Blue Shield contends that because the Policies expressly provide that residential care is not covered, plaintiffs cannot state a claim that the denial of coverage violated the terms of the Policies. In addition, Blue Shield asserts, while the Policies provide benefits for only those services that are covered and are medically necessary, not all services that are medically necessary. Blue Shield argues that because the medical necessity requirement is a limitation on the coverage of services, it cannot be used as a basis for extending coverage to services that are categorically not covered, such as residential treatment services.

In opposition, plaintiffs contend that the requirements of the Parity Act are part of the Policy terms and trump inconsistent Policy language. They base this argument on the fact that the Policies provide that "[a]ny provision required to be in this Contract by reason of . . . state and federal statutes shall bind . . . Blue Shield whether or not such provision is actually included in this Contract." Thus, they assert, Blue Shield is bound by § 1374.72 (and all of Knox-Keene).

### 2. Whether the Parity Act mandates coverage for residential treatment services

In its second main argument, Blue Shield contends that the Parity Act does not mandate coverage for residential treatment services as a matter of law. The Parity Act provides in pertinent part,

> (a) Every health care service plan contract issued, amended, or renewed on or after July 1, 2000, that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age, and of serious emotional disturbances of a child, as specified in subdivisions (d) and (e), under the same terms and conditions applied to other medical conditions as specified in subdivision (c).
>
> (b) These benefits shall include the following:
>
>    (1) Outpatient services.
>
>    (2) Inpatient hospital services.

>(3) Partial hospital services.
>
>(4) Prescription drugs, if the plan contract includes coverage for prescription drugs.
>
>(c) The terms and conditions applied to the benefits required by this section, that shall be applied equally to all benefits under the plan contract, shall include, but not be limited to, the following:
>
>(1) Maximum lifetime benefits.
>
>(2) Copayments.
>
>(3) Individual and family deductibles.
>
>* * *
>
>(e) For the purposes of this section, a child suffering from, "serious emotional disturbances of a child" shall be defined as a child who (1) has one or more mental disorders as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, other than a primary substance use disorder or developmental disorder, that result in behavior inappropriate to the child's age according to expected developmental norms, and (2) who meets the criteria in paragraph (2) of subdivision (a) of Section 5600.3 of the Welfare and Institutions Code.

Cal. Health & Safety Code § 1374.72.

Blue Shield argues that as a matter of law, the Parity Act does not mandate coverage for residential treatment. In support, Blue Shield cites a case involving a claim against Blue Cross of California for denial of coverage for residential treatment at IVRTC. See Wayne W. v. Blue Cross of Calif., 2007 WL 3243610 (D. Utah, Nov. 1, 2007). In that case, the court held that the Parity Act did not require defendant Blue Cross to provide benefits at a residential treatment center on the same basis as other medical benefits.

The court found that the use of "shall include, but not be limited to" in subpart (c) of the Parity Act meant that the items in subpart (c) were intended to be an illustrative list, to be distinguished from the use of "shall include" in subpart (b). The court interpreted the difference in the language of the two subparts as signifying that the four benefits listed in subpart (b) (outpatient services, inpatient hospital services, partial hospital services, and prescription drugs if included in the plan) were the only ones required by law to be provided on a par with other medical benefits. Id., 2007 WL 3243610 at *4.

The court noted that interpreting subpart (b) as a limiting term comported with

general rules of statutory construction by giving effect to the specific language of the statute and by avoiding a reading of the phrase "but not be limited to" in subpart (c) as superfluous. Id.

The court found that a contrary interpretation would conflict with the interpretation adopted by the California Department of Managed Health Care ("DMHC"), the agency charged with monitoring health plans' compliance with § 1374.72. DMHC studied seven plans accounting for approximately 85% of California's commercial managed care population, and issued a "Survey Summary Report" in March 2005 finding that the coverage and usage of residential treatment centers vary markedly among plans, ranging from almost no coverage, to coverage equivalent to that for skilled nursing facilities. Based on the wide variance in coverage of residential treatment benefits, as well as DMHC's characterization of that limitation on residential treatment as a "policy decision" made by the insurer, the court adopted Blue Cross' interpretation as the most plausible reading of § 1374.72. Id.

Here, Blue Shield, asserts, the court should find that the DMHC's interpretation that the Parity Act does not mandate coverage for residential treatment is entitled to substantial weight, if not deference.

In opposition, plaintiffs argue that § 1374.72 and the Policy terms, read together, do mandate coverage for residential treatment. Plaintiffs also contend that the DMHC has never interpreted § 1374.72 to allow insurers to exclude residential treatment, and that the district court's reasoning in Wayne W. is flawed.

First, plaintiffs contend that § 1374.72 and the Policy terms, read together, mandate coverage for residential treatment. Plaintiffs claim that because the Policies include the provision that "residential care is not covered" within the sections discussing "inpatient mental health services," and "partial hospitalization services," Blue Shield therefore clearly considers "residential treatment" to be a type of "inpatient mental health services" and also of "partial hospitalization services."

In addition, plaintiffs assert, because § 1374.72(a) provides that Blue Shield "shall

7

provide coverage for the diagnosis and medically necessary treatment of . . . serious emotional disturbances of a child . . . under the same terms and conditions applicable to other medical conditions . . . ; and because § 1374.72(b) lists the benefits that "shall" be included, as outpatient services, inpatient hospital services, partial hospital services, and prescription drugs (if included in the Plan), Blue Shield is required to provide residential treatment based on plaintiffs' allegation in the complaint that "residential treatment" is a form of inpatient service that is also sometimes referred to as "partial hospital service."

Plaintiffs also argue that based on the Policy definitions of "hospital," "psychiatric hospital" and "psychiatric healthcare facility," the treatment at IVRTC should be covered because it is a psychiatric hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations. In support of this argument, plaintiffs attach an affidavit from a Mary Covington, who states that she performs "billing and consulting services" for ten residential treatment facilities including IVRTC, and attaches copies of what she claims are IVRTC's "licences" from the State of Utah Department of Human Services and the Joint Commission on Accreditation of Healthcare Organizations.

The "license" from the State of Utah states that IVRTC is "licensed to provide intermediate secure care for 115 youth clients ages 11-17 years old," and the "license" from the Joint Commission states that IVRTC has met the requirements for accreditation (2004-2007), and has met the requirements for the Behavioral Health Care Accreditation Program (June 22, 2007, good for 39 months).

Plaintiffs' second main argument is that the DMHC has never interpreted § 1374.72 to allow insurers to exclude residential treatment. Plaintiffs assert that the preface to DMHC's "Survey Summary Report" makes clear that the Report is a "preliminary analysis" of the mental health parity landscape in California. They argue that nothing in the Report suggests that it constitutes formal action taken by DHMC to interpret § 1374.72, or reflects an attempt to analyze the question in this case – whether § 1374.72 requires coverage for residential treatment.

Plaintiffs assert further that regulations promulgated by DHMC to implement

§ 1374.72 make clear that the list in § 1374.72(b) is not exclusive, but rather illustrative. They point to C.C.R. 28 § 1300.74.72, which provides that the mental health services required under § 1374.72 shall include all health care services required under the Parity Act, "including but not limited to" the services listed in § 1374.72(b) (and other statutes), and "shall, at a minimum, include" psychiatric inpatient hospital services and "services from licensed mental health providers including but not limited to psychiatrists and psychologists." Plaintiffs argue that because IVRTC is a "licensed mental health provider" that employs or retains licensed mental health care providers, it falls within the language of the regulation, and cannot be excluded by Blue Shield.

Plaintiffs' third main argument is that the district court's reasoning in Wayne W. is flawed, because it assumes that residential treatment falls outside the scope of either inpatient hospital services or partial hospital services, and because it relies on a superficial reading of the DMHC Report. Plaintiffs also assert that the Policies in this case are different than the policy at issue in Wayne W., as they more clearly state that residential treatment is a form of inpatient hospital service or partial hospital service.

3. Analysis

The court finds that the motion must be DENIED. Since Rule 12(b)(6) is concerned with a claim's sufficiency rather than its substantive merits, when faced with a motion to dismiss, courts typically courts "look only at the face of the complaint." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Thus, a motion under Rule 12(b)(6) is not the proper vehicle for seeking a ruling on the merits of the claims.

With regard to Blue Shield's first main argument – that the Policies do not cover residential care, and therefore Blue Shield's denial of coverage in this case did not violate the terms of the policies – there is no dispute that the Policies are subject to the Knox-Keene Act. Indeed, the Policies clearly state that they are subject to the Knox-Keene Act.

It is true that the Polices state that there is no coverage for residential treatment, and that on that basis the denial of benefits for residential treatment cannot be said to violate the terms of the policies. However, the real issue here is whether, because insurance

policies in California are governed by California law, there is a law that mandates that health insurance policies cover residential treatment.

Thus, the dispute between the parties centers on whether the Parity Act requires that Blue Shield pay for residential treatment. However, whether because the parties are arguing about how the policy terms should be construed, or because they appear to be arguing about whether the denial of benefits was proper under ERISA, the arguments go beyond the question whether the complaint states a claim under Rule 8.

As the court indicated at the hearing, Blue Shield's second main argument – that the Parity Act does not mandate coverage for residential treatment services as a matter of law – raises three questions.

First, how should "residential treatment" be defined? It is defined (more or less) in the complaint, see Cplt ¶¶ 20-23, 60-62, though not in the "Definitions" section of the Policies. It is not clear, however, how "residential treatment" differs from "partial hospitalization," if at all.[3] Moreover, the allegations in the complaint appear to conflict with the Plan provisions.[4]

Second, how should "residential treatment" be defined under the Parity Act? Should it fall under "outpatient," "inpatient," or "partial hospitalization" – or some other category?

Third, can IVRTC be considered a "hospital" under any of the definitions in the Policies? This is the most crucial issue for resolution of the parties' dispute. In addition to the arguments summarized above, plaintiffs attempt to establish that IVRTC is a "hospital"

---

[3] "Partial hospitalization/day treatment program" is defined in the Policies as "a treatment program that may be free standing or Hospital-based and provides services at least 5 hours per day and at least 4 days per week."

[4] Plaintiffs claim that the fact that the provision that "residential care is not covered" is included in the Policy sections discussing "inpatient mental health services," and "partial hospitalization services" means that Blue Shield considers "residential treatment" to be a type of "inpatient mental health services" and also of "partial hospitalization services." However, the allegation in the complaint that "residential treatment" is sometimes referred to as "partial hospitalization" or "partial hospital services," Cplt ¶ 22, appears to be contradicted by provisions of the Policies distinguishing between the two, which bar coverage for "residential treatment" but provide some coverage for "partial hospitalization services." See Crawford Decl., Exh. A at B-64, B-66, B-68; Exh. B at B-36, B-38, B-49.

by including "licenses" from the Joint Commission on Accreditation of Healthcare Organizations and the State of Utah Department of Human Services.

However, even were the court to consider these materials – which would necessitate converting the 12(b)(6) motion into a motion for summary judgment – neither of these documents establishes that IVRTC is a "hospital." The document from the Joint Commission states only that IVRTC has met the requirements for the Behavioral Health Care Accreditation Program, while the document from the State of Utah indicates that IVRTC is licensed to provide "intermediate secure care for 115 youth clients ages 11-17." Moreover, Mary Covington has not established that she has sufficient personal knowledge or the appropriate expertise to authenticate the two "licences."

The question whether "residential treatment" offered by a facility can be considered "partial hospitalization" involves issues of fact, and cannot be answered in the absence of a showing of what services a particular facility offers. Given the fact that no discovery has yet taken place, the court declines to convert the present motion into a motion for summary judgment.

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion. No later than September 17, 2009, Blue Shield shall file an answer to the complaint.

No later than September 30, 2009, the parties shall meet and confer and prepare a stipulation regarding the scheduling of any discovery required for an early motion for summary judgment, and setting forth a proposed briefing and hearing schedule for the summary judgment motion. The court will rule on that motion before authorizing any class discovery or hearing any motion for class certification.

**IT IS SO ORDERED.**

Dated: August 20, 2009

PHYLLIS J. HAMILTON
United States District Judge