UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL F., et al.,

        Plaintiffs,

        v.

BLUE SHIELD OF CALIFORNIA, et al.,

        Defendants.

        _____/

No. C 09-2037 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendant's motion for summary judgment came on for hearing on February 16, 2011. Plaintiffs' motion for leave to amend the complaint came on for hearing on December 22, 2010. At both hearings, plaintiffs appeared by their counsel Brian S. King and David M. Lillienstein, and defendant appeared by its counsel Craig S. Bloomgarden and Gregory Pimstone. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion and DENIES plaintiffs' motion.

## BACKGROUND

This is an action filed under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), challenging the denial of benefits under a health benefits plan. Defendants are California Physicians' Service d/b/a Blue Shield of California ("Blue Shield") and the Ogdemli/Feldman Design Group Benefits Plan ("the Plan"). The Plan is an employee benefits plan as defined under ERISA, and is funded through a group health contract issued by Blue Shield. Blue Shield is a not-for-profit health care service plan, regulated by the California Department of Managed Health Care ("DMHC").

Plaintiffs Daniel F. and Shan O. are the parents of plaintiff Geoffrey F. ("Geoffrey"). Daniel F. and Shan O. were both employed by the Ogdemli/Feldman Design Group, and were participants in the Plan. Geoffrey was a minor at the time of the events alleged in the complaint, and was a beneficiary of the Plan. The Plan provided health care coverage to plaintiffs during the time period in question (May 24, 2007 through February 27, 2008). Blue Shield is the claims administrator for the Plan.

Daniel F. and Shan O. adopted Geoffrey when he was 13 years old. Prior to that time, Geoffrey had been admitted for acute inpatient psychiatric treatment on several occasions. In 2005 and early 2006, Geoffrey participated in intensive outpatient therapy with Action Family Counseling. On December 20, 2005, Blue Shield received a call from Action Family Counseling on behalf of plaintiffs, inquiring about benefits available under the Plan. Blue Shield provided that information, and also advised the caller that residential treatment was not a covered benefit.

In April 2007, Geoffrey was admitted to a wilderness therapy program. Following his discharge from that program, he was admitted to Island View Residential Treatment Center ("IVRTC") in the State of Utah on May 24, 2007. He remained at IVRTC until February 27, 2008. Three days prior to Geoffrey's enrollment, Blue Shield received a call from IVRTC on behalf of plaintiffs, regarding whether residential treatment was covered under the Plan. Blue Shield informed IVRTC that residential care was not covered. IVRTC noted that "RTC is not a covered benefit" in its "Verification of Benefits Form" for Geoffrey.

At the time of Geoffrey's admission to IVRTC, plaintiffs received a letter addressed to "Parent/Guardian," advising generally that residential care at IVRTC might not be covered by insurance. The letter stated, "After any denial by insurance (non-contracted or contracted payers), you are expected to pay treatment costs. . . . By signing this agreement, you acknowledge that your insurance carrier has the right to deny services at any time. . . ." Despite having received this notice, and despite having been advised by Blue Shield that residential services were not covered under the Plan, plaintiffs enrolled Geoffrey at IVRTC.

According to its website, IVRTC is a "high-impact, long-term residential treatment environment; one that can help troubled teens address and overcome the full spectrum of personal obstacles." IVRTC provides 24-hour daily care, including overnight care, on an extended stay basis. IVRTC operates an accredited on-campus private school, providing a full six-period day program, five days a week. IVRTC also provides recreational activities for its residents, including fitness programs, intramural team sports, community service activities, community-based activities (movies, bowling, swimming), and various outdoor activities (camping, hiking, river running, skiing/snowboarding, rock climbing).

IVRTC bills for its services on a per diem basis. The "all-inclusive" per diem rate includes charges for psychiatric evaluation and therapy, and medication management, as well as for the educational program at the private school, the recreational activity program, and room and board. IVRTC submitted bills to Blue Shield for Geoffrey's care, and all such claims described the services provided as "Room & Board RTC."

Blue Shield's Medical Director Dr. David Omerod reviewed the records relating to Geoffrey's stay at IVRTC, and concluded that under the Plan, "[r]esidential care is a benefit exclusion and not a covered benefit. Provider's assertion that residential care benefit exclusion is not applicable to 'parity' mental health diagnoses is incorrect." Blue Shield then issued Explanations of Benefits to plaintiffs and IVRTC denying the claims.

Plaintiffs filed the present action on May 8, 2009, as a proposed class action, challenging Blue Shield's practice of excluding coverage for residential care for treatment for mental health conditions. Plaintiffs allege in the complaint that the practice of excluding coverage for residential treatment services involving mental health conditions violates the terms of Blue Shield's policies, and the requirements of California Health and Safety Code § 1374.72 ("the Parity Act") and California Insurance Code § 10144.5.

Health & Safety Code § 1374.72 is part of the Knox-Keene Health Care Service Plan Act, Cal. Health & Safety Code §§ 1340, et seq., which governs Blue Shield as a health care service plan. Insurance Code § 10144.5 governs policies of disability insurance. Health & Safety Code § 1374.72 and Insurance Code § 10144.5 include

3

identical language requiring coverage of mental health on a par with coverage for other medical conditions.[1]

Health & Safety Code § 1374.72 requires, that

(a) Every health care service plan contract issued, amended, or renewed after July 1, 2000, that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age, and of serious emotional disturbances of a child, as specified in subdivisions (d) and (e), under the same terms and conditions applied to other medical conditions as specified in subdivision (c).

(b) These benefits <u>shall include</u> the following:

(1) Outpatient services.

(2) Inpatient hospital services.

(3) Partial hospital services.

(4) Prescription drugs, if the plan contract includes coverage for prescription drugs.

(c) The terms and conditions applied to the benefits required by this section, that shall be applied equally to all benefits under the plan contract, shall include, but not be limited to, the following:

(1) Maximum lifetime benefits.

(2) Copayments.

(3) Individual and family deductibles.

\* \* \*

(e) For the purposes of this section, a child suffering from, "serious emotional disturbances of a child" shall be defined as a child who (1) has one or more mental disorders as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, other than a primary substance use disorder or developmental disorder, that result in behavior inappropriate to the child's age according to expected developmental norms, and (2) who meets the criteria in paragraph (2) of subdivision (a) of Section 5600.3 of the Welfare and Institutions Code.

Cal. Health & Safety Code § 1374.72.

The complaint asserts two causes of action: a claim alleging that Blue Shield's

---

[1] Plaintiffs appear to have abandoned any claim under Insurance Code § 10144.5. Accordingly, and because the Plan at issue in this case does not provide disability insurance coverage, the court addresses only the portion of the claim under the Parity Act, Health & Safety Code § 1374.72.

4

refusal to provide coverage for residential treatment of mental health conditions violates the terms of the insurance contract, which provides coverage for appropriate medically necessary for mental health conditions that accords with the requirements of California insurance law; and a claim seeking a judicial declaration that Blue Shield's practice of denying coverage for residential treatment services violates the requirements of ERISA and the terms of the policies, and an order enjoining Blue Shield from excluding coverage for residential treatment services.[2]

In June 2009, Blue Shield moved to dismiss the complaint for failure to state a claim. In an order issued August 20, 2009, the court denied the motion, on the basis that Blue Shield was seeking a ruling on the merits of the claims, and that the parties' arguments went beyond the question whether the complaint adequately stated a claim under Federal Rule of Civil Procedure 8(a).

Following a period of discovery, Blue Shield filed a motion for summary judgment. The hearing date was continued to allow time to resolve various discovery disputes. As part of the resolution of those disputes, Blue Shield agreed to conduct a survey of 10 residential treatment facilities, selected by plaintiffs, and to determine the number of claims received and processed for the facility for individuals enrolled in an ERISA plan that had purchased group insurance from Blue Shield to fund the plan; whether the claims were paid; and if the claims were denied, the message codes in Blue Shield's database identifying the basis for denial (along with a key explaining the meaning of the codes).

Pursuant to the stipulation, Blue Shield completed the survey and provided the results to plaintiffs. The survey showed that certain bills submitted in 19 of 31 total claims reviewed were paid, either wholly or in part, by Blue Shield.

Now before the court is Blue Shield's motion for summary judgment and plaintiffs' motion for leave to amend the complaint.

---

[2] At the hearing on Blue Shield's motion for summary judgment, plaintiffs' counsel clarified that the first cause of action is intended not as a state law claim, but as an ERISA claim, challenging the denial of benefits and seeking money damages, and that the second cause of action seeks declaratory relief under the same theory of liability.

**DISCUSSION**

A. Blue Shield's Motion for Summary Judgment

    1. Legal Standard

Under ERISA § 502, a beneficiary or plan participant may sue in federal court under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U .S.C. § 1132(a)(1)(B). "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).

A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 110-11 (2008) ("Glenn").[3]

Under an abuse of discretion review, the dispositive issue is whether the denial of benefits was reasonable. Winters v. Costco Wholesale Corp., 49 F.3d 550, 553 (9th Cir. 1995); see also Conkright v. Frommert, __ U.S. __, 130 S.Ct. 1640, 1651 (2010). An ERISA administrator abuses its discretion only if it renders a decision without explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005). A finding is "clearly erroneous" when, even though it is supported by evidence, the reviewing court "is left with the definite

---

[3] In addition, when an administrator both evaluates and pays claims, a conflict of interest exists that must be weighed in determining whether the administrator met the arbitrary and capricious standard. Id. at 111-12; Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 868 (9th Cir. 2008). In this case, however, plaintiffs do not point to any evidence showing that Blue Shield's decision to deny benefits for residential treatment was impermissibly influenced by a conflict of interest; and, indeed, do not even argue that this court should weigh any purported conflict of interest in considering whether Blue Shield abused its discretion in denying their claim.

and firm conviction that a mistake has been committed." Id. (quotations and citations omitted). A court must "uphold the decision of an ERISA plan administrator if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Id. (citing Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997)).

Ordinarily, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, "where the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009) (citation omitted). Nevertheless, the traditional rules of summary judgment do apply to evidence outside of the administrative record, including the requirement that the evidence must be viewed in the light most favorable to the non-moving party. Id. at 1150.

2.   Blue Shield's Motion

Blue Shield makes two main arguments. First, Blue Shield asserts it did not abuse its discretion by denying plaintiffs' claims for residential care, because the Plan explicitly states in three different places that it does not cover residential care. Blue Shield also notes that IVRTC advises prospective patients – including, in this instance, Geoffrey and his parents – that residential treatment might not be covered; and that Blue Shield advised IVRTC prior to Geoffrey's admission that it would not cover residential treatment at IVRTC.

Blue Shield asserts further that IVRTC is not a facility for which the Plan provides coverage. The Plan defines the types of facilities and services for which there is coverage for mental health benefits. The Plan provides inpatient mental health services when those services are provided at a "Hospital," and also covers mental health services at a "Partial Hospitalization/Day Treatment Program" and at an "Outpatient Facility," as those terms are defined in the Plan. Blue Shield contends that IVRTC does not qualify as either a hospital, or a partial hospitalization/day treatment program, or an outpatient facility. Thus, Blue

7

Shield argues, it did not abuse its discretion in denying plaintiffs' claims for coverage for residential treatment.

In its second main argument, Blue Shield contends that it has fully complied with the requirements of the Parity Act, as the Plan provides parity of coverage between mental and physical conditions for all required categories under the Act. Blue Shield contends that residential care does not fall within one of the categories of services listed in Health & Safety Code § 1374.72(b) (outpatient services, inpatient hospital services, or partial hospital services). Blue Shield asserts that while the Parity Act requires "parity" between specified types of medical services and mental health services, it does not mandate coverage for any specific type of care and does not otherwise expand the terms of the Plan.

Nevertheless, Blue Shield asserts, regardless of whether residential care falls under one of those categories or not, there has been no violation of the Parity Act, because the Plan does not provide for residential treatment as a benefit – not for medical treatment, and not for mental health treatment. Thus, Blue Shield contends, the Plan provides complete parity between mental and physical conditions with respect to residential care.

In opposition to the motion, plaintiffs do not dispute that IVRTC does not provide outpatient services, and they also concede that it is not licensed in the State of Utah as a hospital, psychiatric hospital, or a psychiatric health care facility as defined under California law. Nevertheless, plaintiffs argue that the Parity Act requires Blue Shield to provide coverage for residential treatment, because residential treatment plays an important role in treating severely emotionally disturbed (SED) children, and because the Legislature intended that insurers cover "medically necessary" treatment.

Plaintiffs contend that all aspects of the program at IVRTC, including the "educational" and "recreational" components, are designed to complement and enhance the mental health and behavioral therapies provided for patients. They claim that residential treatment involves 24-hour supervision to ensure the safety of patients, as well as to ensure their compliance with treatment protocols, and argue that adolescents with

serious and debilitating mental health conditions require a secure, residential treatment program in order to recover and begin functioning.

Plaintiffs contend that because the Parity Act requires that health plans provide coverage for the "diagnosis and medically necessary treatment . . . of serious emotional disturbances of a child . . . under the same terms and conditions applied to other medical conditions," Cal. Health & Safety Code § 1374.72(a), residential treatment should fall within the scope of the Parity Act. At the hearing, plaintiffs' counsel added that residential treatment for SED children is the mental health equivalent of treatment at a skilled nursing facility for physically injured patients, and that because Blue Shield covers treatment at skilled nursing facilities, the Parity Act requires that it cover residential treatment for SED children.

Finally, plaintiffs argue that information provided in discovery shows that Blue Shield has acted in an arbitrary and capricious manner in processing residential treatment claims under its policies. They claim that Blue Shield has paid for residential treatment for some patients at some other facilities, notwithstanding the fact that the Plans in those cases also provided that residential care was not covered; and that it has denied payment in others.

Plaintiffs contend this unequal treatment violates ERISA regulations, pointing to 29 C.F.R. § 2560.503-1(b)(5), entitled "Claims procedure," which provides as follows, under the heading "Obligation to establish and maintain reasonable claims procedures" –

> (b) Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures). The claims procedures for a plan that will be deemed to be reasonable only if . . . .
>
> (5) The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

29 C.F.R. § 2560.503-1(b)(5). Plaintiffs assert that the same method of determining coverage has not been used by Blue Shield across the board, with every claimant under every health plan where Blue Shield is the insurer, and that Blue Shield's failure to pay for

residential care for Geoffrey was therefore arbitrary and capricious.

Blue Shield's motion is GRANTED. The Plan provides that "Blue Shield of California shall have the power and discretionary authority to construe and interpret the provisions of this Plan, to determine the Benefits of this Plan and determine eligibility to receive Benefits under this Plan." Accordingly, the court reviews Blue Shield's decision to deny benefits for abuse of discretion. That is, the court must determine whether Blue Shield's interpretation of the Plan was reasonable and in good faith; and whether Blue Shield rendered its decision without explanation, whether it construed provisions of the Plan in a way that conflicts with the plain language of the Plan, or whether it relied on clearly erroneous findings of fact in denying plaintiffs' claim for benefits for residential treatment.

First, the court finds that Blue Shield's interpretation of the Plan was reasonable and in good faith. The Plan covers inpatient mental health services, but only when those services are provided at a "Hospital," and also covers mental health services provided through a "Partial Hospitalization/Day Treatment Program" as defined in the Plan, as well as through an "Outpatient Facility" as defined in the Plan.

The evidence shows, and plaintiffs concede, that IVRTC is not licensed as a hospital, and is not accredited as a psychiatric hospital by the Joint Commission on Accreditation of Health Care Organizations. Nor is it a "psychiatric healthcare facility" within the meaning of California Health & Safety Code § 1250.2, as it is not licensed by the California Department of Mental Health. In addition it is not a skilled nursing facility, and does not provide "inpatient hospital services," "partial hospital services," or "outpatient services."

Rather, IVRTC is licensed by the Utah Department of Human Services to provide "intermediate secure care" for minors ages 11-17. The Office of Licensing in the Utah DHS defines "intermediate secure care" as "24-hour specialized residential treatment." Utah law defines an "Intermediate Secure Treatment Program" as "a 24-hour group living environment" that "offers room and board" and assists individuals "in acquiring the social

and behavioral skills necessary for living in the community." Utah Admin. Code R501-16-1, R501-16-2.

Moreover, the Plan unambiguously excludes coverage for "residential care." Under the section headed "Mental Health and Substance Abuse Benefits – Inpatient Mental Health Services," the Plan states, "Residential care is not covered." Under the section regarding payment for "Mental Health and Substance Abuse Benefits," in a section entitled "Professional (Physician) Services – Inpatient Care (including psychiatric Partial Hospitalization)," the Plan states, "Residential care is not covered." Again, in the section regarding payment for "Mental Health and Substance Abuse Benefits" in a section entitled "Hospital Facility Services," the Plan states, "Residential care is not covered."

The court finds further that Blue Shield did not deny plaintiffs' claim for benefits without explanation. Not only did Blue Shield advise plaintiffs in advance of Geoffrey's enrollment at IVRTC that residential treatment was not a covered benefit under the Plan, but after plaintiffs submitted their claims for residential treatment at IVRTC, Blue Shield issued Explanations of Benefits to plaintiffs and IVRTC denying the claims as not covered under the Plan.

Nor have plaintiffs made any showing that Blue Shield construed the provisions of the Plan in a way that conflicts with the plain language of the Plan. While it is true that the Plan is subject to the requirements of the Parity Act (and certain other provisions of California law), the Parity Act does not mandate any specific benefits for mental health services – but simply requires that they be provided for on a par with other medical conditions.

In particular, the Parity Act does not require that insurers cover residential treatment, and does not <u>require</u> coverage for all "medically necessary health care service," as plaintiffs claim. Rather, it requires only parity of coverage for "outpatient services," "inpatient hospital services," and "partial hospital services," and only for a health care service (physical or mental) that is a benefit provided under a given plan. That is, if the plan at issue covers hospitalization for physical illness where medically necessary, it must cover

hospitalization for mental illness where medically necessary.

Here, the Plan provides parity of coverage between mental and physical conditions for all required categories under the Parity Act. That is, Blue Shield provides benefits for mental health conditions on a par with those for other medical conditions, for outpatient services, inpatient hospital services, and partial hospital services. If a patient with mental health issues requires services in any of these three categories, Blue Shield will provide them, just as it will to a participant who has a physical illness. However, since IVRTC does not provide outpatient services, inpatient hospital services, or partial hospital services, Blue Shield is not required under the Parity Act to pay for the services that IVRTC does offer.

Plaintiffs argue that the intent of the Parity Act is to require parity for all "medically necessary" services, not just the categories of services that are listed in Health & Safety Code § 1374.72(b). However, as the court noted in the August 20, 2009 order, the use of "shall include, but not be limited to" in § 1374.72(c) indicates that the items in subpart (c) of the statute were intended to be illustrative, to be distinguished from the use of "shall include" in subpart (b). Put another way, the four benefits listed in subpart (b) (outpatient services, inpatient hospital services, partial hospital services, and prescription drugs if included in the plan) are the only ones required by law to be provided on a par with other medical benefits. See Wayne W. v. Blue Cross of Calif., 2007 WL 3243610 at *4 (D. Utah, Nov. 1, 2007).

DMHC is the California agency charged with monitoring health plans' compliance with Health & Safety Code § 1374.72. On its website, under the discussion of mental health benefits and the Parity Act, DMHC states, "Ask your plan if residential treatment is covered." DMHC has reviewed various health benefits plans, and, in a report issued in March 2005, concluded that the coverage and usage of residential treatment centers vary markedly among plans. DMHC characterized the limitation on residential treatment as "dependent on the benefit plan package that employers purchase for their employees" – and a "policy decision" made by the plan. See California Department of Managed Health Care, "Mental Health Parity in California - Mental Health Parity Focused Survey Project - A

12

Summary of Survey Findings and Observations," attached as Exhibit E to Blue Shield's Request for Judicial Notice, at 55-56; see also Wayne W., 2007 WL 3243610 at *4.

While statements on DMHC's website and in its report are not regulations under the Administrative Procedures Act, and do not have the force and effect of law, the court nonetheless considers the agency's "expertise" as relevant to the analysis of whether the Parity Act requires coverage for residential treatment. See Yamaha Corp. of America v. State Bd. of Equalization, 19 Cal. 4th 1, 11 (1998). The court concludes that in California, whether a specific plan offers residential treatment as a covered benefit is a matter of contract only, as such coverage is not mandated by the Parity Act.

Finally, plaintiffs' argument regarding Blue Shield's alleged "arbitrary and capricious" processing of claims is not sufficient to defeat summary judgment, and plaintiffs have not established that Blue Shield relied on clearly erroneous findings of fact. The processing of other claims for treatment of other individuals, covered by other plans, treated at other facilities, is not relevant to the question whether Blue Shield properly denied plaintiffs' claim for the residential treatment Geoffrey received at IVRTC while he was covered by the Ogdemli/Feldman Design Group Benefit Plan.

The ERISA regulation cited by plaintiffs does not provide support for their position. By its terms, the regulation sets "minimum requirements" for benefit plan "procedures" pertaining to claims for benefits, requiring that every employee benefit plan "establish and maintain reasonable procedures" governing three areas – the filing of benefit claims, the notification of benefit determinations, and the appeal of adverse benefit determinations. 29 C.F.R. § 2560-503-1(b)(5).

The regulation further provides that such "procedures" set by a particular plan will be considered "reasonable" only if they contain "administrative processes and safeguards," which are designed to ensure and verify (a) that benefit claim determinations are made in accordance with governing plan documents, and (b) that the provisions of that plan have been applied consistently with respect to similarly situated claimants. Id.

Under subsection (l) of this regulation, where a plan fails to establish or follow

reasonable claims procedures consistent with the requirements of the regulation, a claimant may "pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l). Here, however, plaintiffs do not claim that Blue Shield failed to establish or follow reasonable procedures regarding the filing of claims, the notification of benefit determinations, or the appeal of adverse determinations. Rather, plaintiffs assert "improper claims processing practices," based on Blue Shield's alleged "arbitrary and capricious" practice of paying some claims for residential treatment and denying other claims.

Blue Shield has shown that it paid claims for the patients identified in the survey only where the patient was identified as being at an acute inpatient level of care (not a residential level of care) at a licensed psychiatric hospital, or where the claim was inadvertently paid in error. The individuals in the first category were not "similarly situated" with Geoffrey, and thus it was not required to pay Geoffrey's claims in the same way as it did those others. As for the second category, Blue Shield asserts that processing errors are not considered inconsistencies that violate ERISA.

The regulation does not require that every employee benefit plan apply the same administrative processes and safeguards as every other plan, in a manner that is consistent with the application of the processes and safeguards by other plans to other claimants or beneficiaries under those other plans, if they are "similarly situated." At most, the regulation requires "reasonable" processes, not perfection, and does not create a violation for actions based on human error.

B.   Motion for Leave to Amend the Complaint

    1.   Legal Standard

Once a defendant has answered, a plaintiff can amend the complaint only with consent of the defendant, or leave of court, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"). Leave to amend is

14

ordinarily granted unless the amendment is futile, would cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or with a dilatory motive. Foman v. Davis, 371 U.S. 178, 182 (1962).

### 2. Plaintiffs' Motion

Plaintiffs seek to amend the complaint to allege a new cause of action against Blue Shield, based on "newly discovered evidence." In response to discovery requests, Blue Shield provided a survey of claims submitted for its insureds who had received treatment at ten residential treatment facilities during the period from May 1, 2005 to May 1, 2010. Plaintiffs assert that the results of this survey show certain bills in 19 of 31 claims for residential treatment identified in the survey were paid in full or in part by Blue Shield. Plaintiffs argue that this "inconsistent claims processing" violates "state and federal statutes and regulations and contractual and fiduciary duties."

Plaintiffs seek to amend the complaint to add a claim for "improper claims processing practices," which alleges as follows:

> 76. Blue Shield has routinely paid all or portions of residential treatment claims despite language in its policies purporting to categorically exclude coverage for residential treatment.
>
> 77. By treating similarly situated claimants in widely inconsistent and disparate fashion, despite language in the Blue Shield policies purporting to categorically exclude residential treatment, Blue Shield has violated the terms of its policies, the requirements of state and federal statute [sic] and regulations and fiduciary duty standards.
>
> 78. Blue Shield's actions have been arbitrary and capricious and have cause [sic] a loss to the Plaintiffs and the proposed class in the form of wrongly denied coverage for residential treatment claims.

Plaintiffs contend that the new allegations "have a solid basis in fact and in law;" that "undue delay" is not an issue, as granting leave to amend will not require moving the trial date or "unnecessarily drag out the course of litigation," and they did not delay unduly in seeking leave to amend after obtaining knowledge of the facts on which the proposed amended complaint is based.

Plaintiffs also argue that Blue Shield will not be prejudiced if plaintiffs are allowed to amend the complaint; and that the proposed amended complaint will not be futile, because

the alleged inconsistent claims processing and payment practices relate to, among other things, "the propriety of Blue Shield's residential treatment exclusions" and "the ability of Blue Shield to strictly enforce the exclusion to deny all residential treatment claims."

In opposition, Blue Shield argues that the proposed amendment would be futile, for several reasons. First, Blue Shield argues that the alleged facts and claims are outside the administrative record to which the court's review of plaintiffs' denial-of-benefits claim is limited, as the basis of this proposed claim is the records of Blue Shield's processing of claims for other individuals at various facilities under other health plans.

Second, Blue Shield contends that plaintiffs have not suffered a cognizable injury based on the processing of other insured's claims, because a plaintiff who is not entitled to receive benefits under the terms of a plan will not be found to have suffered any prejudice due to procedural violations of ERISA. That is, since plaintiffs are not entitled to benefits for residential care under the terms of their Plans, they have not suffered any injury caused by any alleged procedural violations of ERISA in the handling of other claims. For this reason, Blue Shield argues, plaintiffs do not have standing to assert a cause of action based on the processing of claims for other individuals who were covered under other health benefit plans.

Third, Blue Shield contends that ERISA does not authorize or support a claim based on errors in processing the claims of others. ERISA's claims procedure regulation provides that a plan shall establish reasonable claims procedures that contain "processes and safeguards" so that, "where appropriate, the plan provisions have been applied consistently with respect to similarly-situated claimants." 29 C.F.R. 2560.503-1(b)(5). Blue Shield argues that this regulation mandates reasonable processes – but does not mandate perfection or create a violation based on human error.

In a related argument, Blue Shield asserts that plaintiffs cannot rely on Blue Shield's payment of claims to other individuals as "evidence" that Blue Shield is forever bound to pay for all subsequent claims for residential care. That is, Blue Shield asserts, coverage under an ERISA health plan cannot be created by estoppel, and estoppel cannot be used

16

to vary the express terms of a plan.

Blue Shield also contends that request for leave to amend is not supported by "substantial and convincing evidence." Blue Shield asserts that its evidence shows that where Blue Shield determined that a claim was for residential care, it denied the claim as not a "benefit," and that it paid claims for the patients identified in the survey in only two situations – either the patient was determined to be at an acute inpatient level of care (not a residential level of care) at a licensed psychiatric hospital (and thus was not "similarly situated" with plaintiff Geoffrey), or the claim was inadvertently paid in error (which does not amount to an inconsistency that violates ERISA).

In reply, plaintiffs assert that the proposed amendment is not futile. With regard to Blue Shield's argument that resolution of this proposed claim will necessarily involve facts and claims outside the administrative record, plaintiffs contend that ERISA's "claims processing requirements," set forth in 29 C.F.R. § 2560.503-1(b)(5), "necessarily contemplate an evaluation of claims other than those brought by a particular plaintiff when identifying whether ERISA fiduciaries have satisfied their claims processing and fiduciary duties to treat similarly situated claimants in a consistent fashion when processing claims under the same policy language."

As for whether they have been injured, plaintiffs contend that there are "unpaid residential treatment expenses which were wrongfully denied by Blue Shield," and also contend that they have standing to bring their own claims based on damages they have incurred. (However, Blue Shield's argument was that plaintiffs have not suffered a cognizable injury based on Blue Shield's processing of other claims.)

Plaintiffs assert that Blue Shield's failure to maintain the safeguards identified in 29 C.F.R. § 2560.503-1(b)(5) to ensure that similarly situated claimants are not treated in a disparate manner is a procedural violation of ERISA, and that a systematic and persistent inconsistency in treatment of claimants subject to the same policy language is a substantive deprivation of plaintiffs' rights under ERISA.

With regard to the argument that an ERISA claim cannot be premised on errors in

17

processing the claims of others, plaintiffs reiterate that they are not asserting a right to payment of benefits based on a single failure of Blue Shield's claims processing system, but rather that they are claiming that Blue Shield unpredictably deviates from claim to claim in processing residential treatment claims under the same policy language. Plaintiffs assert that this violates the fiduciary standards of ERISA and constitutes arbitrary and capricious behavior.

With regard to the argument that coverage under an ERISA health plan cannot be created by estoppel, plaintiffs argue that both the original and the proposed amended complaints allege that the express terms of the Plan <u>require</u> Blue Shield to cover residential treatment. Plaintiffs contend that because California's statutory mandates are implicitly or by operation of law incorporated into the policy, and because the Parity Act requires that insurers provide coverage for residential treatment for mental illness, providing coverage for residential treatment is a requirement under the policy, not just a statutory requirement.

The motion is DENIED. The court finds that the proposed amendment would be futile. The issue to be decided in this case is whether Blue Shield improperly failed to pay for residential treatment for Geoffrey F., which in turn is dependent on whether the Plan covers residential treatment for mental health disorders, and if it does not, whether the Parity Act nonetheless requires such coverage.

As set forth above in the ruling on Blue Shield's motion for summary judgment, residential treatment is not a covered benefit under the Plan, and Blue Shield was not obligated under the Parity Act to offer coverage for residential treatment. Thus, Blue Shield is correct in asserting that plaintiffs are essentially arguing for coverage created by estoppel.

The court assumes that plaintiffs intend the proposed new cause of action as another ERISA § 502 claim, as state law common law causes of action arising from the improper processing of a claim are preempted by federal law. See <u>Spain v. Aetna Life Ins. Co.</u>, 11 F.3d 129, 131 (9th Cir. 1993). Plaintiffs' proposed cause of action for "improper claims processing practices" clearly falls within the scope of ERISA § 502(a)(1)(B). See

18

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987) (section 502(a)(1)(B) "embraces claims by ERISA plan participants asserting improper processing of insurance claims").

Nevertheless, the proposed claim of improper claims processing practices does not pose a challenge to the way in which Blue Shield exercised its discretion in processing their claim under the Plan. As explained above in the discussion of Blue Shield's motion for summary judgment, plaintiffs cannot show that Blue Shield violated the terms of the Plan, or that Blue Shield violated the Parity Act.

To the extent that plaintiffs are attempting to argue that Blue Shield was required to pay their claim because it paid certain claims of other claimants under other plans (whether in error or for some other reason), it is clear that ERISA coverage cannot be established by estoppel if recovery would contradict the written provisions of the plan. Parker v. BankAmerica Corp., 50 F.3d 757, 769 (9th Cir. 1995); Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992).

Moreover, in order to recover benefits based on an alleged failure by Blue Shield to establish procedural safeguards to ensure that similarly situated claimants are treated the same under the same Plan, plaintiffs would have to show that the procedural violation caused a substantive violation. Parker, 50 F.3d at 769; Bogue v. Ampex Corp., 976 F.2d 1319, 1326 n. 33 (9th Cir. 1992). Here, since plaintiffs were not entitled to receive benefits for residential treatment under the Plan, they did not suffer a substantive harm. See Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1308 (9th Cir. 1986) (no substantive harm where plaintiff was not prejudiced by failure to comply with ERISA disclosure requirements).

Unless plaintiff can point to a basis in ERISA to support a claim of "improper claims processing" in this case, the issue of what Blue Shield did or did not do in connection with other claims is simply not relevant. Any claim of "procedural unfairness," based on 29 C.F.R. § 2560.503-1(b)(5)), fails, as plaintiffs do not allege that Blue Shield failed to establish reasonable procedures regarding the filing of claims, the notification of benefit determinations, or the appeal of adverse determinations.

**CONCLUSION**

In accordance with the foregoing, the court finds that Blue Shield's motion for summary judgment must be GRANTED, and that plaintiffs' motion for leave to amend the complaint must be DENIED.

**IT IS SO ORDERED.**

Dated: March 3, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge