1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7
8
9    DANIEL F., et al.,
10             Plaintiffs,                    No. C 09-2037 PJH
11        v.                                  **ORDER DENYING MOTION FOR**
                                              **CLASS CERTIFICATION**
12   BLUE SHIELD OF CALIFORNIA, et al.,
13             Defendants.
     _____/
14

15        Plaintiffs' motion for class certification came on for hearing before this court on July

16   9, 2014.  Plaintiffs appeared by their counsel Brian S. King, David M. Lilienstein, and

17   Robert Wing, and defendant Blue Shield of California appeared by its counsel Craig S.

18   Bloomgarden and Gregory Pimstone.  Having read the parties' papers and carefully

19   considered their arguments and the relevant legal authority, the court hereby DENIES the

20   motion.

21                              **BACKGROUND**

22        Plaintiffs Daniel F. and Shan O. are the parents of plaintiff Geoffrey F.  At the time of

23   the events alleged in the complaint, plaintiffs were participants/beneficiaries of the

24   Ogdemli/Feldman Design Group Benefit Plan ("the Plan"), provided through the

25   employment of Daniel F. and Shan O.  Geoffrey was a minor for part of the relevant time

26   period.

27        The Plan included a group health insurance policy from defendant Blue Shield of

28   California ("Blue Shield").  The policy provided, in part, that

> [t]his Contract is subject to the requirements of the Knox-Keene Health Care Service Plan Act, Chapter 2.2 of Division 2 of the California Health and Safety Code and Title 28 of the California Code of Regulations.  Any provision required to be in this Contract by reason of the Act or Regulations shall bind Blue Shield whether or not such provision is actually included in the Contract.

The policy also included provisions excluding coverage for "residential treatment."

Geoffrey received residential mental health and behavioral treatment at Island View Residential Treatment Center ("IVRTC") in the State of Utah, from May 24, 2007 through February 27, 2008.  Blue Shield denied coverage for Geoffrey's residential treatment, based on the policy exclusion in the Plan.

Plaintiffs filed the present action on May 8, 2009.  Plaintiffs allege that Blue Shield's practice of excluding coverage for residential treatment services involving mental health conditions violates the terms of Blue Shield's policies and the requirements of the California Mental Health Parity Act, California Health & Safety Code § 1374.72 ("Parity Act") and California Insurance Code § 10144.5, which mandate coverage for treatment of severe mental illness in a person of any age, and serious emotional disturbances ("SED") in a child, under the same terms and conditions applied to other medical conditions.

Plaintiffs assert two causes of action – a claim of "violation of the terms of the contract" which is "governed by ERISA," and a claim for "declaratory and injunctive relief." In the claim of violation of the terms of the contract, plaintiffs allege that the terms of the contract "provide coverage for appropriate medically necessary treatment for mental health conditions that accord with the requirements of California insurance law," and that Blue Shield's refusal to provide coverage for residential treatment of mental health conditions violated those contract terms.  In the claim for declaratory and injunctive relief, plaintiffs seek a judicial declaration that "Blue Shield's practice of denying coverage for residential treatment services violates the requirements of ERISA and the terms of the insurance policies at issue in this case," and ask the court to enjoin "Blue Shield's practice of excluding coverage for residential treatment services."

Blue Shield filed a motion for summary judgment, arguing that it had not abused its

United States District Court

For the Northern District of California

1   discretion by denying plaintiffs' claims for residential care, because the Plan stated in three

2   places that it did not cover residential care for mental health conditions, because Blue

3   Shield had advised plaintiffs in advance that residential treatment was not covered, and

4   because IVRTC was not a facility of the type for which the Plan provided coverage as it

5   was not a "Hospital," and did not offer mental health services in a "Partial Hospitalization/

6   Day Treatment Program" or an "Outpatient Facility."  Blue Shield also asserted that it had

7   fully complied with the requirements of the Parity Act, as the Plan provided parity of

8   coverage between mental and physical conditions for all required conditions under the Act.

9        In their opposition, plaintiffs agreed that IVRTC was not a "Hospital," a "Partial

10  Hospitalization/Day Treatment Program," or an "Outpatient Facility," but argued that the

11  Parity Act required Blue Shield to provide coverage for residential treatment because

12  residential treatment plays a crucial role in treating SED children such as Geoffrey, and

13  because the California Legislature intended that insurers cover "medically necessary"

14  mental health treatment.

15       On March 3, 2011, the court granted Blue Shield's motion.  The court found that the

16  Parity Act does not require coverage for any particular mental health services, but requires

17  only parity of coverage for "outpatient services," "inpatient services," and "partial hospital

18  services," and only for a health care service (whether physical or mental) that is a benefit

19  provided under a given plan.  That is, the court concluded, if the plan at issue covers

20  "hospitalization" for physical illness where medically necessary, it must also cover

21  "hospitalization" for mental illness where medically necessary.  Because the Plan did not

22  provide for residential treatment as a benefit for any condition, the court found that the

23  Parity Act did not require that Geoffrey's residential treatment be covered for behavioral

24  and mental disorders.

25       Plaintiffs appealed the ruling and judgment.  During the pendency of the appeal, the

26  Ninth Circuit issued its decision in Harlick v. Blue Shield of Calif., 686 F.3d 699 (9th Cir.

27  2012).  The plaintiff in Harlick was a participant in a Blue Shield ERISA plan that excluded

28  coverage for residential treatment.  She suffered from anorexia, a mental health condition

3

United States District Court

For the Northern District of California

1    covered by the Parity Act.  She was treated at Castlewood, a Missouri residential care

2    facility specializing in eating disorders.  See id. at 703-04.

3         The Ninth Circuit majority held that while the plan at issue did not require Blue Shield

4    to pay for residential care under its residential care exclusion, the Parity Act requires plans

5    falling within the scope of the Parity Act to cover "medically necessary treatment" for mental

6    health conditions covered by the Act, subject to the same financial terms and conditions

7    they impose on coverage for physical illnesses.  Id. at 707, 719, 721.[1]  The majority

8    concluded that under the facts of the case, residential care for treatment of anorexia was a

9    benefit that was covered pursuant to the Parity Act.

10        On January 22, 2013, the Ninth Circuit issued a decision reversing the grant of

11   summary judgment in the present case.  The order stated that because the court had held

12   that the Parity Act requires health plans to provide coverage for all medically necessary

13   treatment for severe mental illnesses, "the basis for the district court's order granting

14   summary judgment in favor of [Blue Shield] is foreclosed by Harlick, [and] appellants'

15   opposed motion for summary disposition is granted."  The court summarily reversed the

16   judgment and remanded the case "for further proceedings consistent with Harlick."

17                                            **DISCUSSION**

18   A.    Legal Standard

19        A party seeking to maintain a class action "'must affirmatively demonstrate his

20   compliance'" with Federal Rule of Civil Procedure 23.  Comcast Corp. v. Behrend, 133

21   S.Ct. 1426, 1432 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551-52

22   (2011)); see also Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982) (party

23   moving for class certification bears the burden of establishing that the Rule 23

24   requirements are satisfied).

25        The primary question in deciding a plaintiff's motion for class certification is not

26

27   ────────────────

28        [1] Plans that "fall within the scope of the Act" are plans whose contracts where "issued,
     amended, or renewed on or after July 1, 2000, that provide[ ] hospital, medical, or surgical
     coverage."  Cal. Health & Saf. Code § 1374.72(a).

United States District Court
For the Northern District of California

1   whether the plaintiff has stated a cause of action that will prevail on the merits, but whether

2   he/she has met the requirements of Rule 23.  See United Steel, Paper & Forestry, Rubber,

3   Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co., 593

4   F.3d 802, 808 (9th Cir. 2010); see also Mazza v. American Honda Motor Co., Inc., 666

5   F.3d 581, 588 (9th Cir. 2012) (court must conduct a "rigorous analysis" to determine

6   whether the moving party has met the prerequisites of Rule 23).  However, Rule 23 "does

7   not set forth a mere pleading standard." Comcast, 133 S.Ct. at 1432 (quoting Dukes, 131

8   S.Ct. at 2551-52).  Plaintiffs must prove that they meet each of the four requirements of

9   Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b).

10  Id.; see also Dukes, 131 S.Ct. at 2551-52.

11      As a threshold matter, the party seeking class certification must demonstrate that an

12  identifiable and ascertainable class exists.  Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D.

13  Cal. 2009).  "While it is not an enumerated requirement of Rule 23, courts have recognized

14  that 'in order to maintain a class action, the class sought to be represented must be

15  adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288

16  F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th

17  Cir.1970)).

18      Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality

19  and adequacy of representation in order to maintain a class.  Mazza, 666 F.3d at 588.

20  That is, the class must be so numerous that joinder of all members individually is

21  "impracticable;" there must be questions of law or fact common to the class; the claims or

22  defenses of the class representative must be typical of the claims or defenses of the class;

23  and the class representative must be able to protect fairly and adequately the interests of

24  all members of the class.  See Fed. R. Civ. P. 23(a)(1)-(4).

25      If the class is ascertainable and all four prerequisites of Rule 23(a) are satisfied, the

26  court must also find that plaintiffs have "satisf[ied] through evidentiary proof" at least one of

27  the three subsections of Rule 23(b).  Comcast, 133 S.Ct. at 1432.  Rule 23(b)(1) requires a

28  showing that there is a risk of substantial prejudice or inconsistent adjudications from

United States District Court

For the Northern District of California

1  separate actions, while Rule 23(b)(2) requires a showing that "the party opposing the class

2  has acted or refused to act on grounds that apply generally to the class, so that final

3  injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

4  whole."  Fed. R. Civ. P. 23(b)(1), (2).  Rule 23(b)(3), under which plaintiffs seek certification

5  in the present case, requires a showing that "questions of law or fact common to class

6  members predominate over any questions affecting only individual members, and that a

7  class action is superior to other available methods for fairly and efficiently adjudicating the

8  controversy."  Fed. R. Civ. P. 23(b)(3).

9       "[A] court's class-certification analysis . . . may 'entail some overlap with the merits of

10  the plaintiff's underlying claim.'"  Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 133

11  S.Ct. 1184, 1194 (2013) (quoting Dukes, 131 S.Ct. at 2551).  Nevertheless, "Rule 23 grants

12  courts no license to engage in free-ranging merits inquiries at the certification stage."  Id. at

13  1194-95.  "Merits questions may be considered to the extent – but only to the extent – that

14  they are relevant to determining whether the Rule 23 prerequisites for class certification are

15  satisfied."  Id. at 1195.  If it concludes that the moving party has met its burden of proof,

16  then the court has broad discretion to certify the class.  See Zinser v. Accufix Research

17  Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir.

18  2001).

19  B.    Plaintiffs' Motion

20       Plaintiffs contend that class certification is proper in this case because each of the

21  members of the class suffered the same type of injury.  They argue that each of the class

22  members is a Blue Shield participant or beneficiary in an ERISA plan who was treated in a

23  residential treatment center ("RTC") or who was financially responsible for payment of RTC

24  treatment, and whose claims for RTC treatment were routinely denied by Blue Shield.

25       Plaintiffs assert that the proposed class meets all the requirements of Rule 23.  They

26  contend that the proposed class is ascertainable, and that it satisfies the Rule 23(a)

27  requirements of numerosity, commonality, typicality, and adequacy of representation.  They

28  also assert that the proposed class meets the requirements of Rule  23(b)(3), as common

6

United States District Court

For the Northern District of California

questions predominate and a class action is a superior means of adjudicating plaintiffs' claims in this case.

In opposition, Blue Shield argues that the definition of the proposed class is overbroad and that the class is not ascertainable. Blue Shield does not contest plaintiffs' contentions with regard to the Rule 23(a) requirements, but focuses instead on the Rule 23(b)(3) factors, arguing that individual issues predominate over common questions as to both liability and damages, and that a class action is not a superior method of adjudicating plaintiffs' claims.

1.    Ascertainability

"An order that certifies a class action must define the class and the class claims, issues, or defenses . . . ." Fed. R. Civ. P. 23(c)(1)(B). "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action." Manual for Complex Litigation, Fourth § 21.222 (2004). While Rule 23 does not impose any explicit requirement concerning the class definition, courts generally accept that the definition must be "precise, objective, and presently ascertainable" before the class action can proceed. See id.; see also Xavier v. Philip Morris USA Inc., 787 F.Supp. 2d 1075, 1089 (N.D. Cal. 2011); Rodriguez v. Gates, 2002 WL 1162675 at *8 (C.D. Cal. May 30, 2002) (quoting O'Connor v. Boeing North American, Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

"[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Vietnam Vets, 288 F.R.D. at 211 (quoting O'Connor, 184 F.R.D. at 319). That is, the class definition must be sufficiently definite so that the members of the class can be ascertained by reference to objective criteria. In re Cathode Ray Tube (CRT) Antitrust Litig., 2013 WL 5429718 at *6 (N.D. Cal., June 20, 2013); see Xavier, 787 F.Supp. 2d at 1089. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." Hanni v.

7

1  Am. Airlines, Inc., 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) (quoting 5 James W.

2  Moore, Moore's Federal Practice § 23.21(3)(c) (Matthew Bender 3d ed. 2011)); see

3  also Tidenberg v. Bidz.com, 2010 WL 135580 at *2 (C.D. Cal. Jan. 7, 2010); Heffelfinger v.

4  Elec. Data Sys. Corp., 2008 WL 8128621 at *5 (C.D. Cal. Jan. 7, 2008).

5         In the present action, plaintiffs define the proposed class in the complaint as "the

6  group of individuals and entities who have been wrongfully denied coverage for residential

7  treatment services for mental health conditions under Blue Shield group or individual health

8  insurance policies."  Cplt ¶ 14.  They also allege that "Blue Shield is responsible to pay the

9  [p]laintiffs and all proposed class members the benefits due under the terms of the Contract

10  for medical treatment provided to adolescents and young adults at residential treatment

11  facilities for mental health conditions . . . ."  Cplt ¶ 81.[2]

12        In their motion, plaintiffs seek certification of a Rule 23(b)(3) class of "beneficiaries

13  who received residential treatment for mental health and behavior disorders, whose

14  requests were denied by Blue Shield of California based on a policy exclusion for

15  residential treatment, and whose health insurance was governed by [ERISA]."  This

16  proposed class also includes "parents of those beneficiaries to the extent they were

17  financially responsible for payment for the treatment."

18        Plaintiffs argue that the proposed class is adequately defined and is clearly

19  ascertainable by reference to objective criteria.  They assert that each member of the

20  proposed class was denied reimbursement for RTC treatment, and that it is administratively

21  feasible to determine whether a particular person is a class member because Blue Shield

22  maintains a computer system that could easily identify class members.  Specifically, they

23  assert that Blue Shield can use the taxpayer ID numbers of the RTCs (which it can find on

24  the claim forms) to search its database, and that its computer system will allow it to

25  determine for each person the reason for the denial; and that Blue Shield can also search

26  _____

27        [2]  The allegations in the complaint suggest an intent to seek certification under either
   Rule 23(b)(1) or Rule 23(b)(2), as there is no mention of predominance of common questions

28  or superiority of the class action procedure.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  its computer system for information about the providers' "licensure," which will enable it to

2  determine which providers have an RTC license.

3  　　　In support of this argument, plaintiffs cite to the deposition testimony of Shari Glago,

4  a Senior Network Manager for Blue Shield.  However, plaintiffs have not provided a copy of

5  the transcript of this deposition testimony, or of any of the deposition testimony cited

6  elsewhere in their motion.  With the exception of motions on the pleadings, motions in

7  federal court are generally decided on the basis of declarations or affidavits or other written

8  evidence, including properly authenticated exhibits.  See Fed. R. Civ. P. 43(c); Civ. L.R. 7-

9  5; see also Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial

10  §§ 12:42, et seq.  The court does not consider any arguments based on factual assertions

11  that are unsupported by evidence.

12  　　　The only evidence provided by plaintiffs in support of their argument that the class is

13  ascertainable is a declaration by Mary C. Covington, the President and CEO of Denials

14  Management, Inc., a Utah-based company that provides assistance to claimants and

15  healthcare organizations pursuing denied insurance claims.  She claims that "if necessary,"

16  she "or someone with similar experience," could "contact RTCs to obtain records showing

17  Blue Shield denials of payment based on the residential treatment exclusion," which in her

18  view "would allow identification of members of the proposed class."

19  　　　In opposition, Blue Shield contends that the proposed class is overbroad, because it

20  is not limited by time, and because it potentially includes individuals who did not suffer from

21  a condition required to be covered under the Parity Act.  Blue Shield asserts further that the

22  proposed class is not ascertainable because it is not possible for Blue Shield to readily

23  identify from its own records whether a particular plan is governed by ERISA, and because

24  plaintiffs have not established a feasible basis for identifying "residential treatment" claims

25  that would be governed by the Parity Act.

26  　　　Citing the declaration of Tina Donohue, a Blue Shield claims manager, Blue Shield

27  contends that there is no standard or internal code that identifies whether a Blue Shield

28  plan is covered by ERISA; and no unique code or group of codes – standard or internal –

United States District Court

For the Northern District of California

1   that would readily identify all claims for services at an RTC or that are universally used by

2   RTCs in submitting bills to Blue Shield on standard claim forms used by institutional health

3   care providers.  Citing the declaration of Shari Glago and another Senior Network Manager,

4   Regina O'Brien, Blue Shield asserts that plaintiffs' proposed approach to identifying RTCs

5   by searching for contracted providers with a residential treatment license is unworkable, as

6   Blue Shield does not contract with out-of-state providers, and as to California providers,

7   there is no licensure specific to RTCs.

8        The court finds that the class definition is not precise or sufficiently definite, and that

9   the proposed class is not clearly ascertainable by reference to objective criteria.  Plaintiffs

10  have proffered an array of class definitions, none of which can be considered "precise,

11  objective, and presently ascertainable."  In short, the definition is a moving target.

12       In the complaint, the proposed class consists of a "group of individuals and entities

13  who have been wrongfully denied coverage for residential treatment services for mental

14  health conditions under Blue Shield group of individual health insurance policies;" and Blue

15  Shield is "responsible to pay" the proposed class members "for medical treatment provided

16  to adolescents and young adults at residential treatment facilities for mental health

17  conditions."

18       In their moving papers, the proposed class is defined as "beneficiaries who received

19  residential treatment for mental health and behavior disorders, whose requests were

20  denied by Blue Shield of California based on a policy exclusion for residential treatment,

21  and whose health insurance was governed by [ERISA]," plus "parents of those

22  beneficiaries to the extent they were financially responsible for payment for the treatment."

23       In the reply brief, plaintiffs assert at various points in their argument that the

24  members of the proposed class are "individuals insured by Blue Shield of California who

25  received treatment at residential treatment centers . . . and whose treatment was not fully

26  reimbursed;" or are claimants whose claims are "ERISA claim[s], for a Parity Act condition

27  for treatment in an RTC;" or are "'insureds' of Blue Shield rather than participants or

28  beneficiaries of self-funded plans for which Blue Shield acts as a third party administrator;"

**United States District Court**
For the Northern District of California

1  or are "insureds" who "received treatment for a Parity Act diagnosis."  At the hearing on the

2  motion, in response to the court's request for clarification of the definition of the proposed

3  class, plaintiffs' counsel responded that the class consists of "individuals insured by Blue

4  Shield who had claims they incurred at residential treatment centers and whose claims

5  were denied based on a policy exclusion."

6        Plaintiffs have failed to provide a precise and objective definition of the class.  It is

7  unclear whether the class includes every "individual or entity" insured by Blue Shield who

8  was denied coverage for residential treatment for a mental health condition, or whether it is

9  limited to those insured by Blue Shield under an ERISA plan.  Nor can the court determine

10  whether the proposed class is limited to those who were diagnosed with a "serious mental

11  illness" as defined in the Parity Act, or whether it includes those who were treated for any

12  mental health condition in a residential treatment facility.  Nor is it clear whether the

13  proposed class is limited to children and adolescents, or whether it includes "young adults,"

14  or more generally, beneficiaries over the age of 18; or, if it is limited to children and

15  adolescents, whether their parents (who did not receive residential treatment) are also

16  members of the class.  The only constants appear to be beneficiaries who were insured in

17  some capacity under a Blue Shield health insurance policy, and who received mental

18  health treatment in a residential treatment facility, and who claim that Blue Shield

19  improperly denied coverage.  This failure to precisely define the proposed class creates a

20  major barrier for certification.

21        Apart from the lack of a coherent class definition, the court finds that the class is not

22  ascertainable for several additional reasons.  The class must be ascertainable in order that

23  the preclusive effect of final judgment can be properly enforced.

24       The class definition must be clear in its applicability so that it will be clear later
     on whose rights are merged into the judgment, that is, who gets the benefit of

25       any relief and who gets the burden of any loss.  If the definition is not clear in
     its applicability, then satellite litigation will be invited over who was in the class

26       in the first place.

27  Xavier, 787 F.Supp. 2d at 1089 (citing Romberio v. Unumprovident Corp., 385 Fed. Appx.

28  423, 431-33 (6th Cir. 2009); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259

United States District Court
For the Northern District of California

1  F.3d 154, 187, 191-93 (3d Cir. 2001)).

2  Here, taking just the class definition proposed in the moving papers, the court notes

3  that it includes class members who are not similarly situated, as it specifies that the

4  members of the proposed class are the "beneficiaries" who received residential treatment,

5  and the "parents of those beneficiaries" who did not receive treatment, but who were

6  financially responsible for paying for the treatment received by the beneficiaries.  In

7  addition, however, the proposed definition is not limited to "beneficiaries" who were minors.

8  The proposed class appears to include every beneficiary/participant in a Blue Shield ERISA

9  plan who was denied coverage, based on a policy exclusion, for any form of "residential

10  treatment" for any form of mental illness or behavioral disorder.

11  Further, none of the proposed class definitions is limited in any way as to time.  Blue

12  Shield contends that plaintiffs are attempting to sweep in claims that were submitted more

13  than four years before the filing of the complaint, or that were submitted after Blue Shield

14  claims it started paying for residential treatment in 2011.  There is no federal statute of

15  limitation applicable to lawsuits seeking benefits under ERISA.  Gordon v. Deloitte &

16  Touche, LLP Group, 749 F.3d 746, 750 (9th Cir. 2014).  The Ninth Circuit therefore looks to

17  the most analogous state statute – which in California is the four-year statute of limitation

18  governing actions involving written contracts.  Id.  At the hearing, plaintiffs' counsel stated

19  that plaintiffs would be "happy to go back four years before the filing of the complaint."

20  Presumably, then, although plaintiffs have not limited any of their proposed definitions by

21  time, they now propose a class period beginning on May 8, 2005.  It also appears,

22  however, that they contend that the class period extends up to the present, which raises a

23  further factual dispute as to whether Blue Shield has revised its practices post-Harlick with

24  regard to covering claims for residential treatment.[3]

25  _____

26  [3]  Plaintiffs contend that the proposed class includes claimants whose claims were
denied post-Harlick. According to plaintiffs, Blue Shield "continues to tell its insureds who call
27  to verify the existence of benefits or pre-authorize residential treatment, that it does not
reimburse treatment at RTCs." In support, plaintiffs cite to the Second Declaration of Mary C.
28  Covington (filed with the reply brief), and to a letter they claim Blue Shield mailed in May 2014
to one of its insureds denying coverage for RTC (attached as an exhibit to the Covington

United States District Court
For the Northern District of California

Plaintiffs have not precisely defined the class based on objective criteria.  Plaintiffs contend that the class is ascertainable because Blue Shield and/or the providers have sufficient information in their records to determine who is a member of the class and are capable of reviewing those records to locate any potential class member.  However, plaintiffs have not proposed any workable method by which the members of the proposed class (however defined) can be identified.

Plaintiffs repeatedly assert that Blue Shield's "records" will yield the information necessary to determine which plans are governed by ERISA, but, as explained below in the discussion of the Rule 23(b)(3) requirements, unless Blue Shield conducts a series of individualized inquiries, it cannot readily make that determination.  To do so, it must ascertain the level of employer involvement, including whether the employer established and maintained the plan and made contributions to the plan; and the relationship between Blue Shield and the plan in determining the proper defendant.

Similarly, plaintiffs have failed to establish a feasible basis for identifying the "residential treatment" claims that would be covered by the Parity Act.  They contend that Blue Shield has "records" showing which claims it denied based on its RTC exclusion, and argue that the class could be ascertained "by examining those records," as could the question whether the claims are residential treatment claims.  Nevertheless, as shown by the Glago, Donohue, and O'Brien declarations, Blue Shield cannot readily identify all the "residential treatment" claims, and would be required to conduct an individualized analysis of all submitted claims to determine which ones might potentially have been submitted by members of the proposed class, and whether they in fact included treatment for Parity Act conditions.  Certification is not appropriate where ascertaining class membership necessitates an unmanageable individualized inquiry.  See Tietsworth v. Sears, Roebuck & Co., 2013 WL 1303100, at *3-4 (N.D. Cal. Mar. 28, 2013)

A further problem is that at least some of the proposed class definitions appear to

_____

declaration).  However, the declaration lacks any foundation for the conclusions concerning whether Blue Shield changed its practices post-Harlick.

United States District Court

For the Northern District of California

1  define class membership by reference to individuals who received residential treatment and

2  whose claims were denied by Blue Shield in violation of the Parity Act.   Determining class

3  membership under such a definition will essentially require resolving the merits of each

4  individual's claim that he or she received residential treatment for a mental health condition,

5  and that Blue Shield unlawfully denied coverage.  This by itself renders the class action

6  "unmanageable virtually by definition," see Heffelfinger, 2008 WL 8128621, at *5;

7  5 Moore's Federal Practice, § 23.21[3][c], and makes plaintiffs' class definition unworkable.

8      Finally, while a lack of ascertainability alone will not necessarily defeat class

9  certification, see Jones v. ConAgra Foods, Inc., 2014 WL 2702726, at *11 (N.D. Cal. June

10  13, 2014), manageability is a factor that must be taken into consideration before the court

11  can certify a Rule 23(b)(3) class.  See Schwarzer, et al., §§ 10:427, et seq.; see also In re

12  POM Wonderful LLC, 2014 WL 1225184, at *6 n.8 (C.D. Cal. Mar. 25, 2014) (noting that

13  administrative difficulties implicate not only the threshold ascertainability question, but also

14  manageability and superiority concerns under Rule 23(b)(3)).

15      2.    Rule 23(a)

16      "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the

17  class whose claims they wish to litigate." Dukes, 131 S.Ct. at 2550.  When considering a

18  class certification motion, the trial court must perform a "rigorous analysis" to ensure that

19  "the prerequisites of Rule 23(a) have been satisfied." Id. at 2551.  In doing so, and as

20  Dukes clarifies, a district court must examine evidence going to the merits, to the extent

21  examination of that evidence necessarily overlaps with the analysis required to determine

22  whether Rule 23(a) factors have been met.  See id. at 2552.

23      a.    Numerosity

24      Rule 23(a)(1) requires a showing that the class is so numerous that joinder of all

25  members individually is "impracticable."  Courts generally find that the numerosity factor is

26  satisfied if the class comprises 40 or more members, and will find that it has not been

27  satisfied when the class comprises 21 or fewer.  See, e.g., Celano v. Marriott Int'l, Inc., 242

28  F.R.D. 544, 549 (N.D. Cal. 2007).  Here, plaintiffs contend that the proposed class meets

14

United States District Court
For the Northern District of California

1   this requirement, and Blue Shield offers no opposition.  Accordingly, the court finds that the

2   proposed class is sufficiently "numerous."

3               b.    Commonality

4        Rule 23(a)(2) requires "questions of law or fact common to the class."  This provision

5   requires plaintiffs to "demonstrate that the class members 'have suffered the same injury,'"

6   not merely violations of  "the same provision of law."  Dukes, 131 S.Ct. at 2551 (citation

7   omitted).  Accordingly, plaintiffs' claims "must depend upon a common contention" such

8   that "determination of [their] truth or falsity will resolve an issue that is central to the validity

9   of each one of the claims in one stroke."  Id.  "What matters to class certification . . . is not

10  the raising of common 'questions' – even in droves – but, rather the capacity of a classwide

11  proceeding to generate common answers apt to drive the resolution of the litigation."  Id.

12  (citation omitted).

13       Plaintiffs need not show, however, that "every question in the case, or even a

14  preponderance of questions, is capable of class wide resolution. So long as there is 'even a

15  single common question,' a would-be class can satisfy the commonality requirement of

16  Rule 23(a)(2)."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013)

17  (quoting Dukes, 131 S.Ct. at 2556; see also Mazza, 666 F.3d at 589 ("commonality only

18  requires a single significant question of law or fact").  Thus, "[w]here the circumstances of

19  each particular class member vary but retain a common core of factual or legal issues with

20  the rest of the class, commonality exists."  Evon v. Law Offices of Sidney Mickell, 688 F.3d

21  1015, 1029 (9th Cir. 2012) (citations and quotations omitted).

22       Plaintiffs argue that there are questions of law or fact common to the class.

23  Specifically, they contend that "the" common question/issue was set out by the Ninth Circuit

24  in its January 23, 2013 order reversing the order granting summary judgment for Blue

25  Shield in this case – that under Harlick, the Parity Law requires health plans to provide

26  coverage for all medically necessary treatment for severe mental illness.  Here, they assert,

27  because "each of the proposed class members has a claim that would be governed by

28  Harlick, application of [Harlick] presents a common question."  Plaintiffs contend that this

United States District Court

For the Northern District of California

1    common issue is the same for all class members, and all the class members were injured

2    in the same way because Blue Shield improperly denied payment for their care in an RTC.

3        Blue Shield does not dispute that the proposed class meets the commonality

4    requirement.  It is not entirely clear that this is a "common contention" such that

5    "determination of its truth or falsity will resolve an issue that is central to the validity of each

6    [claim] in one stroke," Dukes, 131 S.Ct. at 2551, as the "question" has already been

7    decided, at least as to the individual claim raised in the Harlick case (which was not a class

8    action), and which involved a claim for residential treatment for anorexia.  Nevertheless, for

9    purposes of Rule 23(b)(2), "even a single [common] question will do." Id. at 2556.

10       The general principle that notwithstanding any policy exclusion, the Parity Act

11   requires "coverage" for the types of "severe mental illnesses" listed in the statute, including

12   "severe emotional disturbances of a child" or "SEDs" – which coverage may include

13   residential treatment – is arguably sufficient to show commonality.

14           c.    Typicality

15       Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

16   typical of the claims or defenses of the class."  Representative claims are "typical" if they

17   are "reasonably coextensive with those of absent class members; they need not be

18   substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

19   The test of typicality is "whether other members have the same or similar injury, whether

20   the action is based on conduct which is not unique to the named plaintiffs, and whether

21   other class members have been injured by the same course of conduct." Hanon v.

22   Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  Thus, "[t]ypicality refers to the

23   nature of the claim or defense of the class representative, and not to the specific facts from

24   which it arose or the relief sought." Id.

25       "Where the challenged conduct is a policy or practice that affects all class members,

26   the underlying issue presented with respect to typicality is similar to that presented with

27   respect to commonality, although the emphasis may be different." Armstrong v. Davis, 275

28   F.3d 849, 868-69 (9th Cir. 2001).  The named plaintiffs' injuries need not be identical to

United States District Court

For the Northern District of California

1    those of the other class members; what is required is that "the unnamed class members

2    have injuries similar to those of the named plaintiffs and that the injuries result from the

3    same, injurious course of conduct."  Id.

4         Here, plaintiffs argue that their claims are typical of the claims of the members of the

5    proposed class.  They assert that Geoffrey F. received residential treatment which Blue

6    Shield refused to cover, and his parents, Daniel F. and Shan O. were responsible for

7    paying for his care at IVRTC, and now seek reimbursement for Geoffrey's care. They

8    contend that all members of the proposed class are participants and beneficiaries whose

9    RTC treatment was not reimbursed, and thus, the named plaintiffs' claims are typical.

10        They contend that all members of the class were injured by the same course of

11   conduct and suffered essentially the same injury, in that each member of the class was

12   responsible for medical bills that should have been covered by their insurer, Blue Shield

13   (which denied payment).  Plaintiffs contend that because Daniel F. and Shan O. paid for

14   Geoffrey's treatment at IVRTC, their interests are aligned with the interests of the other

15   members of the class.  They assert that there is no conflict between the legal theory of the

16   named plaintiffs and that of the class generally, and that the named plaintiffs are typical.

17        As noted above, Blue Shield has provided no argument in opposition to plaintiffs'

18   contention that their claims are typical of the claims of the class.  Given the problems with

19   lack of ascertainability, it is difficult to make a determination as to whether plaintiffs' claims

20   are typical of the claims of the members of the proposed class.  Nevertheless, in light of

21   Blue Shield's failure to oppose this part of the motion, the court finds that plaintiffs claims

22   are typical of the claims of the class.

23             d.    Adequacy of representation

24        Rule 23(a)(4) requires a showing that "the representative parties will fairly and

25   adequately protect the interests of the class."   To determine whether named plaintiffs will

26   adequately represent a class, courts must decide whether the named plaintiffs and their

27   counsel have any conflicts of interest with other class members and whether the named

28   plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  Ellis

**United States District Court**
For the Northern District of California

1  v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011).

2        Here, plaintiffs assert that they will fairly and adequately protect the interests of the

3  class.  First, with regard to conflicts of interest, they argue that because their claims are

4  typical of those of the class, their interests are closely bound to those of the absent class

5  members and there is no conflict.  They contend that they will all benefit from the

6  application of Harlick so that their claims at residential treatment centers will be paid by

7  Blue Shield.

8        Second, plaintiffs argue that they have vigorously pursued this action on behalf of

9  the class – having pursued the matter through summary judgment and appeal – and that in

10  so doing, they have adequately protected the interests of the class.  They also assert that

11  the lawyers for the proposed class are experienced in class action litigation and also

12  experienced in ERISA and other types of health insurance litigation.

13        Based on Blue Shield's failure to oppose this part of the motion, the court finds that

14  plaintiffs will adequately and fairly protect the interests of the class.

15        3.    Rule 23(b)

16        Plaintiffs seek certification of a Rule 23(b)(3) class.  Plaintiffs must "satisfy through

17  evidentiary proof" the provisions of Rule 23(b)(3).  See Comcast, 133 S.Ct. at 1432.  Under

18  Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common to class

19  members predominate over  any questions affecting only individual members," and that "a

20  class action is superior to  other available methods for fairly and efficiently adjudicating the

21  controversy."  Fed. R. Civ. Pro. 23(b)(3).

22              a.    Predominance of common questions

23        The requirement that questions of law or fact common to class members

24  predominate over questions affecting only individual members "tests whether proposed

25  classes are sufficiently cohesive to warrant adjudication by representation."  Amchem

26  Prods., Inc., v. Windsor, 521 U.S. 591, 623 (1997).  This inquiry requires the weighing of

27  the common questions in the case against the individualized questions, which differs from

28  the Rule 23(a)(2) inquiry as to whether the plaintiff can show the existence of a common

1    question of law or fact.  See Dukes, 131 S.Ct. at 2556.

2         In addition, however, Rule 23(b)(3) requires a more stringent analysis than does

3    Rule 23(a)(2).  See Comcast, 133 S.Ct. at 1432.  Rule 23(a)(2) simply requires a "common

4    contention" that is "capable of classwide resolution" and "will resolve an issue that is central

5    to the validity of each one of the claims in one stroke."  Amchem, 521 U.S. at 624; see also

6    Comcast, 133 S.Ct. at 1432; Dukes, 131 S.Ct. at 2545, 2551.  By contrast, to satisfy the

7    Rule 23(b)(3) predominance inquiry, it is not enough to establish that common questions of

8    law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement.  Indeed, the

9    analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law

10   have been established pursuant to Rule 23(a)(2)."  Hanlon, 150 F.3d at 1022.    Rule

11   23(b)(3) focuses on "the relationship between the common and individual issues."  Id.

12   Under the predominance inquiry, "there is clear justification for handling the dispute on a

13   representative rather than an individual basis" if "common questions present a significant

14   aspect of the case and they can be resolved for all members of the class in a single

15   adjudication . . . ."  Id., quoted in Mazza, 666 F.3d at 589.  An essential part of the

16   predominance test is whether "adjudication of common issues will help achieve judicial

17   economy."  In re Wells Fargo Home Loan Mortg. Overtime Pay Litig., 571 F.3d 953, 958

18   (9th Cir. 2009) (citations and quotations omitted).

19        Thus, to satisfy this requirement, plaintiffs must show both (1) that the existence of

20   individual injury arising from the defendant's alleged actions (i.e., the defendant's liability to

21   each class member) is "capable of proof at trial through evidence . . . common to the class

22   rather than individual to its members" and (2) that "the damages resulting from that injury

23   [are] measurable 'on a class-wide basis' through the use of a 'common methodology.'"

24   Comcast, 133 S.Ct. at 1430 (citation omitted).

25        Plaintiffs contend that any questions about the identity of the class members and the

26   damages they suffered can be addressed by resort to Blue Shield's records, without the

27   need for a multitude of mini-trials.  In their moving papers, they identify but a single

28   "common question" – whether the Parity Act requires Blue Shield to cover residential care

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   for serious mental illness as defined in the Act, notwithstanding the residential care

2   exclusion in its health plans.  As this question was answered in <u>Harlick</u>, plaintiffs also argue

3   that the application of <u>Harlick</u> "predominates over all other issues in this case," as it

4   "establishes that under ERISA, the Parity Law prohibits Blue Shield from denying

5   reimbursement for RTC coverage," and was decided in a way that determines the issue for

6   all members of the class.

7       Plaintiffs also argue that the class members have "similar kinds of damages," in that

8   each class member was damaged "because Blue Shield did not pay for residential

9   treatment."  Plaintiffs acknowledge that there will be differences in the amounts each will be

10  entitled to recover, but contend that the fact that damages may require individualized

11  inquiries does not defeat certification of a Rule 23(b)(3) class.  They claim that their position

12  is supported by <u>Leyva v. Medline Indus</u>, 716 F.3d 510 (9th Cir. 2013), where the court held

13  that in this Circuit, "damage calculations alone cannot defeat class certification."  <u>Id.</u> at 513-

14  14.

15      In opposition, Blue Shield argues that plaintiffs cannot meet the requirements of

16  Rule 23(b)(3) because individual issues predominate over common questions as to both

17  liability and damages.  Blue Shield notes that plaintiffs have identified only a single common

18  question – whether the Parity Act requires Blue Shield to cover residential care

19  notwithstanding the residential care exclusion in its health plans.  But, Blue Shield notes,

20  this question has already been decided – in <u>Harlick</u>.  Thus, there is no remaining common

21  question for the court to resolve.  Moreover, Blue Shield, asserts, whether a particular

22  individual can recover under <u>Harlick</u> depends on myriad claimant-specific issues that

23  require individualized discovery and proof, such that there is no way that a single trial could

24  resolve all the putative class members' claims.

25      The court finds that plaintiffs have failed to establish that common issues

26  predominate over questions affecting only individual members.  The court begins with the

27  elements of the underlying causes of action.  Here, plaintiffs allege two causes of action –

28  an ERISA claim of denial of benefits based on a violation of the terms of the contract, and a

United States District Court

For the Northern District of California

claim of declaratory and injunctive relief. However, because declaratory and injunctive relief are remedies, rather than independent causes of action, the sole substantive claim is the claim that Blue Shield violated the terms of an ERISA plan contract by denying coverage for residential treatment of serious mental illness as defined in the Parity Act.

With regard to liability, the question whether a particular claimant's plan is governed by ERISA involves individualized issues. "The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." Stuart v. UNUM Life Ins. Co. of America, 217 F.3d 1145, 1149 (9th Cir. 2000) (citation and quotation omitted).

To resolve this question, the court must among other things consider whether the plan was established or maintained by an employer or employee organization; whether the employer or employee organization made any contributions; whether participation in the plan was voluntary for employees or members; whether the sole functions of the employer or employee organization were, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs, and to remit them to the insurer; and whether the employer or employee organization received any consideration in connection with the program other than reasonable compensation for administrative services actually rendered in connection with payroll deductions of dues checkoffs. See 29 U.S.C. § 1002(1), (2); 29 C.F.R. § 2510.3-1(j).

In addition, the court must evaluate the relationship between Blue Shield and the plan in determining the proper defendant. For example, to the extent that any of the members of the proposed class are beneficiaries of a self-funded plan, Blue Shield would have no liability if it was performing solely as a third-party administrator and did not assume liability as a claims fiduciary. See Kyle Railways, Inc. v. Pacific Admin. Servs., Inc., 990 F.2d 513, 515-516 (9th Cir. 1993); see also IT Corp. v. Gen'l Am. Life Ins. Co., 107 F.3d 1415, 1419-22 (9th Cir. 1997).

The question whether a claimant's claim falls under the scope of the Parity Act also

United States District Court

For the Northern District of California

1  raises individualized issues.  Plaintiffs suggest that liability has been established as to all

2  members of the proposed class by virtue of the Ninth Circuit's decision in <u>Harlick</u>.

3  However, <u>Harlick</u> held that Blue Shield's exclusion for residential treatment is enforceable

4  except where the Parity Act applies.  <u>See id.</u>, 686 F.3d at 707-08.  Thus, Blue Shield is not

5  required to cover residential treatment for any condition that does not fall under the Parity

6  Act.  <u>Id.</u>  The Parity Act does not cover all treatment for all mental health conditions, but

7  only those "health care services" that are "medically necessary" for certain severe mental

8  illnesses and SEDs specified in the Act.  <u>See</u> Cal. Health & Saf. Code § 1372.74; 28 CCR §

9  1300.74.72.  If a particular claimant does not fall within the scope of the Parity Act, the rule

10  in <u>Harlick</u> does not apply.

11      In order to establish that his/her claim falls under the Parity Act, each purported

12  class member would have to show that he/she has a Parity Act condition, that the

13  residential care services he/she received were for treatment of that condition, that the

14  services/treatment were covered by the Parity Act, and that the services/treatment were

15  medically necessary (or that Blue Shield had waived that requirement by not raising it

16  during the administrative proceeding when it had sufficient information in its possession to

17  have evaluated medical necessity).  Each of these questions may require an individualized

18  inquiry, which defeats predominance.

19      For example, a claimant seeking coverage for SED services must be under the age

20  of 18, because "serious emotional disturbances of a child" does not apply to someone over

21  the age of 18.  In the present case, Geoffrey was enrolled at IVRTC for approximately nine

22  months, but he turned 18 approximately seven months into his stay.

23      A claimant seeking coverage for services for treatment of "severe mental illnesses"

24  must show that the diagnosed condition was one of those listed in the Parity Act –

25  schizophrenia, schizoaffective disorder, bipolar disorder (manic-depressive illness), major

26  depressive disorder; panic disorder, obsessive-compulsive disorder, pervasive

27  developmental disorder or autism, anorexia nervosa, and bulimia nervosa.  Alcoholism and

28  substance abuse are not listed as a "severe mental illness," but among the other treatment

United States District Court

For the Northern District of California

1  Geoffrey received was therapy for substance abuse, which is not a "severe mental illness"

2  and does not fall under the Parity Act.

3       With regard to damages, individual issues also predominate.  A plaintiff seeking to

4  certify a class under Rule 23(b)(3) must establish "through evidentiary proof" that damages

5  are "capable of measurement 'on a classwide basis.'"  Comcast, 133 S.Ct. at 1432-33

6  (citation omitted).  Absent such proof, the class cannot be certified because questions of

7  individual damages calculations "will inevitably overwhelm questions common to the class."

8  Id. at 1433.

9       Here, plaintiffs have not offered any proof that damages can be calculated on a

10  classwide basis.  They argue (without proof) that damages can be calculated based on

11  information obtained from Blue Shield's records, or on the "application of Blue Shield's own

12  claims processing procedures."  They suggest that any inquiry into damages is irrelevant,

13  citing Leyva, 716 F.3d at 513, for the proposition that "damages calculations alone cannot

14  defeat certification."

15       The facts of Leyva are distinguishable from the facts in the present case.  Leyva

16  involved wage-and-hour claims under California law, asserted by current and former hourly

17  employees against a single employer.  In denying the plaintiffs' motion for certification of a

18  Rule 23(b)(3) class, the district court identified only one individualized factor – the amount

19  of pay owed to each of the class members.  In reversing the denial of class certification, the

20  Ninth Circuit noted that "damages determinations are individual in nearly all wage-and-hour

21  class actions," and it was in that context that the court held that "the presence of

22  individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."  Id.

23  at 513-14.  The court added that if the putative class members proved the liability of the

24  defendant employer, damages would be calculated based on the wages each class

25  member lost due to the employer's unlawful practices, which the evidence showed could be

26  calculated from information in the employer's computerized payroll and time-keeping

27  database.  Id. at 514

28       The situation is considerably more complicated in the present action.  A claim for

United States District Court

For the Northern District of California

denial of benefits under ERISA allows claimants to recover "benefits due to him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs, who do not seek certification of a class of beneficiaries who were covered under the same plan, or who received similar forms of therapy or treatment at the same RTC, have presented no model establishing that damages are capable of measurement on a classwide basis. Calculating damages will require more than simply re-processing denied claims through Blue Shield's claim processing system, and totaling up all those denied claims.

Blue Shield has presented evidence showing that Geoffrey received non-healthcare services (such as educational services and recreational activities) at IVRTC, along with healthcare services and treatment; that he was treated for Parity Act conditions as well as at least one non-Parity Act condition (substance abuse); and that he was charged for periods of time (up to two weeks at a time) when he was not actually in residence at IVRTC and was therefore not receiving any healthcare services.

Similarly, each member of the proposed class may have received non-healthcare services along with healthcare services and treatment, and may have been treated for non-Parity Act conditions as well as Parity Act conditions. Blue Shield has provided evidence showing that there are several types of RTCs, including therapeutic boarding schools such as IVRTC, eating disorder facilities, and substance abuse facilities, which offer different types of programs and services. For example, eating disorders facilities typically do not provide educational services or recreational activities, and also provide more health services to their patients than do therapeutic boarding schools. Plaintiffs propose no method of determining which treatment/services were covered and to what extent.

In addition, a particular RTC may have presented Blue Shield with a bill for services in a particular amount, while charging the claimant (as in the case of plaintiffs here) a discounted rate, or may have charged Blue Shield for periods of time when the claimant was not in residence at the RTC. Moreover, different plans impose different annual deductibles, co-payments, and out-of-pocket maximums, which would also affect the amount of recovery owed to a particular claimant. See Harlick, 686 F.3d at 711, 721.

24

United States District Court

For the Northern District of California

1   Plaintiffs' proposed solution is an essentially mechanical process that would not

2   require any close review of individual claims.  In this case, however, the process would be

3   far from mechanical, as calculating damages would require manual review of each

4   claimant's records, as well as discovery on what each claimant actually paid, what he/she

5   still owes, the nature of the services provided, and the amounts attributable to services

6   covered under the Parity Act – thus necessitating mini-trials on individualized issues.

7            b.      Superiority of class action

8   Rule 23(b)(3) also requires the court to determine whether "a class action is superior

9   to other available methods for the fair and efficient adjudication of the controversy," based

10  on the following nonexclusive factors:

11          (A) the interest of members of the class in individually controlling the
12          prosecution. . . of separate actions; (B) the extent and nature of any litigation
            concerning the controversy already commenced by. . . members of the class;
            (C) the desirability. . . of concentrating the litigation of the claims in the
13          particular forum; (D) the difficulties likely to be encountered in the
            management of a class action.
14
    Fed. R. Civ. P. 23(b)(3)(A)-(D).
15
16  Plaintiffs argue that these factors support class certification here.  They contend that

    the first two factors assume the existence of pending litigation against Blue Shield raising
17
    the same issues.  However, they assert, there is no such pending litigation,[4] so those two
18
    factors do not apply.  As for the third factor, they claim that "[t]his forum is uniquely well-
19
    suited to adjudicate this dispute because of the Ninth Circuit's decision and remand," and
20
    that "[r]esolution in this forum eliminates any risk of inconsistent results."  Finally, with
21
    regard to the fourth factor, plaintiffs contend that the class is manageable, as "[c]lass
22
    members can be identified from Blue Shield's records, and notice provided to the
23
    addresses in Blue Shield's records."  They assert that Blue Shield has not "thus far"
24
    suggested any difficulties in manageability.
25
26  A class action is not a superior method of adjudicating the claims of the proposed

27          [4] Plaintiffs contend that in discovery, Blue Shield provided a list of suits brought against
28  it relating to its denial of RTC claims.  According to plaintiffs, no pending ERISA claims were
    listed.  Plaintiffs provide no evidentiary support for this assertion.

United States District Court

For the Northern District of California

1   class, as determinations of both liability and damages as to each member of the proposed

2   class will require an individualized inquiry.  The members of the proposed class have a

3   stronger interest in controlling the prosecution of individual actions because their individual

4   monetary claims are likely to be substantial (which gives each class member an incentive

5   to bring an individual suit).  In addition, ERISA provides for attorney's fees.  The sole

6   common question – whether the Parity Act requires Blue Shield to cover medically

7   necessary residential treatment notwithstanding the residential care exclusion in its health

8   plans – has already been resolved by <u>Harlick</u>.  Thus, no efficiencies would be gained by the

9   class action vehicle, because the only questions that remain would be unique to individual

10   beneficiaries.

11       Finally, and most importantly, managing this case as a class action would be difficult

12   given the individual liability and damages issues, and in particular, given the lack of

13   ascertainability.  Manageability of a class action is a key factor in a Rule 23(b)(3)

14   determination, and here, because each class member would have to establish his or her

15   own right to recover (or to establish the extent of any such recovery), a class action would

16   not be "superior."  Plaintiffs have made no attempt to explain how the court could possibly

17   try this case as a class action given the number of individual issues involved.

18                                 **CONCLUSION**

19       In accordance with the foregoing, the court finds that the motion must be DENIED.

20   In light of plaintiffs' failure to articulate a definition of an ascertainable class, and in light of

21   the fact that numerous individual issues predominate over any common issues, a class

22   action is plainly not a superior method of adjudication of the controversy.

23

24   **IT IS SO ORDERED.**

25   Dated:  August 11, 2014

26                                   _____
                                     PHYLLIS J. HAMILTON
27                                   United States District Judge

28