1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6   DANIEL F., et al.,
                                              Case No.  09-cv-2037-PJH
7          Plaintiffs,

8       v.                                    **ORDER GRANTING PLAINTIFFS'
                                              MOTION FOR SUMMARY JUDGMENT
9   BLUE SHIELD OF CALIFORNIA, et al.,        IN PART AND DENYING IT IN PART**

10         Defendants.

11

12

13         Before the court is plaintiffs' motion for summary judgment, seeking an award of

14   damages, attorney's fees, interest, and costs.  Having read the parties' papers and

15   carefully considered their arguments and the relevant legal authority, the court hereby

16   GRANTS the motion in part and DENIES it in part.

17                        **PROCEDURAL BACKGROUND**

18         Plaintiffs Daniel F. and Shan O. are the parents of plaintiff Geoffrey F ("Geoffrey").

19   At the time of the events alleged in the complaint, plaintiffs were participants in and/or

20   beneficiaries of the Ogdemli/Feldman Design Group Benefit Plan ("the Plan"), provided

21   through the employment of Daniel F. and Shan O.

22         The Plan included a group health insurance policy from defendant Blue Shield of

23   California ("Blue Shield").  The policy excluded coverage for "residential treatment."

24   Geoffrey received residential mental health and behavioral treatment at Island View

25   Residential Treatment Center ("Island View") in the State of Utah, from May 24, 2007

26   through February 27, 2008.  Blue Shield denied coverage for Geoffrey's residential

27   treatment, based on the policy exclusion in the Plan.

28         Plaintiffs filed the present action on May 8, 2009, as a proposed class action.

United States District Court
Northern District of California

Plaintiffs alleged that Blue Shield's practice of excluding coverage for residential treatment services involving mental health conditions violated the terms of Blue Shield's policies and the requirements of the California Mental Health Parity Act, California Health & Safety Code § 1374.72 ("Parity Act") and California Insurance Code § 10144.5, which mandate coverage for treatment of severe mental illness in a person of any age, and serious emotional disturbances in a child, under the same terms and conditions applied to other medical conditions.

Plaintiffs asserted two causes of action – a claim of "violation of the terms of the contract" which is "governed by ERISA," and a claim for "declaratory and injunctive relief."  In the contract claim, plaintiffs alleged that the terms of the contract "provide coverage for appropriate medically necessary treatment for mental health conditions that accord with the requirements of California insurance law," and that Blue Shield's refusal to provide coverage for residential treatment of mental health conditions violated those contract terms.  In the claim for declaratory and injunctive relief, plaintiffs sought a judicial declaration that "Blue Shield's practice of denying coverage for residential treatment services violates the requirements of ERISA and the terms of the insurance policies at issue in this case," and asked the court to enjoin "Blue Shield's practice of excluding coverage for residential treatment services."

In April 2010, Blue Shield filed a motion for summary judgment.  Following several continuances of the hearing date, plaintiffs moved in November 2010 for leave to amend the complaint to add a cause of action alleging "inconsistent claims processing."  Plaintiffs subsequently filed a motion to continue the hearing on the summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f).  On December 22, 2010, the court heard argument on the motion to amend the complaint and the motion to continue the ruling on the summary judgment motion.  The court denied the motion to continue the summary judgment ruling, and set the motion for hearing on February 16, 2011.

On March 3, 2011, the court issued an order denying the motion for leave to amend the complaint, and granting the motion for summary judgment based on the policy

2

1   exclusion for residential treatment.  Plaintiffs filed a notice of appeal on March 11, 2011

2   (9th Cir., No. 11-15601).  On August 31, 2011, after plaintiffs had filed their opening brief

3   but before Blue Shield had filed its responsive brief, the Ninth Circuit granted Blue

4   Shield's request to stay the appeal pending the final decision in Harlick v. Blue Shield of

5   Calif. (9th Cir., No. 10-15595), a case raising similar issues.

6          On June 4, 2012, the Ninth Circuit issued an opinion in Harlick, holding that while

7   the ERISA Plan at issue did not require coverage for residential treatment for anorexia,

8   the Parity Act did.  Specifically, the majority concluded that while Blue Shield's plan did

9   not require it to pay for residential care under its residential care exclusion, the Parity Act

10  requires plans that fall within its scope to cover "medically necessary treatment" for

11  mental health conditions covered by the Act, subject to the same financial terms and

12  conditions they impose on coverage for physical illnesses.  See Harlick v. Blue Shield of

13  Calif., 686 F.3d 699, 707, 719-21 (2012).

14         On January 22, 2013, the Ninth Circuit issued an order reversing the grant of

15  summary judgment in the present case, based on the decision in Harlick, and remanding

16  the case.  The mandate issued on February 14, 2013.  Following a period of discovery,

17  plaintiffs filed a motion for class certification on May 2, 2014.  The court heard argument

18  on July 9, 2014, and issued an order denying the motion on August 11, 2014.  The court

19  set a further case management conference ("CMC") for October 2, 2014.

20         In the parties' September 25, 2014 joint CMC statement, Blue Shield asserted that

21  the case "is now an individual claim for benefits allegedly due to [p]laintiffs," and that

22  while the parties might litigate liability issues, "the amount at issue on [p]laintiffs'

23  individual claim is bounded. . . . Island View accepted $79,954 in payment in full from

24  [p]laintiffs, which sets a ceiling on [p]laintiffs' potential benefits recovery."  For their part,

25  plaintiffs contended that "[i]n order to evaluate the remaining options available in moving

26  the case forward," additional discovery would be required, followed by completion of ADR

27  and filing of dispositive motions.  At the CMC, the court ordered the parties to complete

28  mediation by February 11, 2015, and set a February 25, 2015 deadline for filing

United States District Court
Northern District of California

United States District Court
Northern District of California

dispositive motions, which was later extended to March 27, 2015, at the parties' request.

On March 9, 2015, Blue Shield served plaintiffs with an offer of judgment pursuant to Federal Rule of Civil Procedure 68, offering to pay $79,954 in damages, plus $27,767.79 in prejudgment interest, with fees and costs to be determined by the court after entry of judgment.  Plaintiffs did not respond to the offer.

Neither side filed a dispositive motion – a motion that would dispose of the claims or defenses in the case – on March 27, 2015.  Instead, without first seeking leave of court, plaintiffs filed a "renewed" motion for class certification on that date (more than seven months after the court had denied class certification), later claiming that they were entitled to do so because motions for class certification are "dispositive."  On April 8, 2015, Blue Shield moved to strike the motion.

On May 21, 2015, the court issued an order denying the motion to strike, but advising plaintiffs that it viewed the "renewed" motion as a motion for reconsideration, and that plaintiffs would be required to seek leave to file a motion for reconsideration as required by the Civil Local Rules.  Plaintiffs did so on May 29, 2015, and on June 22, 2015, the court denied the motion for leave to file a motion for reconsideration, and terminated the previously filed "renewed" motion.  On June 23, 2015, the court set a further CMC for July 16, 2015.

In the July 9, 2015 joint CMC statement, Blue Shield offered to stipulate to entry of judgment in favor of plaintiffs in the amount of $79,954 – the amount plaintiffs had paid to Island View for the residential treatment and the amount Island View had accepted in full payment – which Blue Shield again asserted was the maximum that plaintiffs could recover for the alleged wrongful denial of benefits.  Blue Shield further offered to stipulate to payment of prejudgment interest in the amount of $29,403, calculated based on the rate set in 28 U.S.C. § 1961, which courts in the Ninth Circuit generally apply in ERISA cases.  Blue Shield also proposed that the court determine the amount of attorney's fees and costs to which plaintiffs might be entitled.

Plaintiffs took the position that they retained "claims for declaratory and injunctive

4

relief and an interest in spreading attorney fees incurred" in the litigation.  They asserted that "there can be no resolution of the case that is acceptable to them without a ruling in their favor on these issues as well as the case being certified as a class action."  They indicated that they intended to appeal the denial of class certification, and asserted that they would not agree to a judgment that did not include all the remedies and relief they were seeking.  As for the amount Blue Shield was offering to pay for damages and interest, plaintiffs requested "an opportunity to verify the amounts identified by Blue Shield in its position statement" to determine whether the amounts were "accurate."

In response, Blue Shield argued that plaintiffs had no basis to seek declaratory or injunctive relief, in light of the Ninth Circuit's ruling in Harlick, and that under existing Ninth Circuit authority, it would be permissible for plaintiffs to stipulate to judgment as to damages and interest, while preserving their right to appeal any fees and costs award as well as the denial of class certification.

At the July 16, 2015 telephonic CMC, the parties advised the court that they had been unable to reach agreement as to damages, interest, or attorney's fees.  The court stated that it would permit each side to file a motion for summary judgment as to those issues; that plaintiffs could not raise arguments regarding other Blue Shield insureds; and that there was no basis for plaintiffs to seek declaratory or injunctive relief based on the operative complaint, given the relief already afforded by the Harlick decision.  The court made no determination as to the basis for taxing costs.

Plaintiffs filed the present motion for summary judgment on August 26, 2015.  Blue Shield did not file a motion.

## DISCUSSION

A.    Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

B.      Plaintiffs' Motion

In this motion, plaintiffs seek damages in the amount of $79,954; attorney's fees in the amount of $725,801.27; costs in the amount of $18,196.41; prejudgment interest at a rate of 15% from the date of denial of the claim to the date of Blue Shield's offer of judgment; and post-judgment interest at the statutory rate.  The court first addresses damages, costs, and interest, and then discusses the award of attorney's fees.

1.      Damages

With regard to the amount of the damages, plaintiffs assert that the parties agreed at the time of the July 16, 2015 further CMC that the principal owing for damages for plaintiffs' individual claim is $79,954.  Thus, they seek an order confirming that they are entitled to $79,954 in damages.  Blue Shield does not oppose the amount of damages claimed by plaintiffs.

The motion for an award of damages in the amount of $79,954 is GRANTED. While it is true that Blue Shield offered plaintiffs that amount on more than one occasion during the course of the litigation, and that plaintiffs failed to respond to Blue Shield's offers (and did <u>not</u> agree to that amount of damages at the time of the July 16, 2015 CMC), those facts are not relevant to the amount of damages that should be awarded.

2.      Costs

Plaintiffs seek reimbursement of costs in the amount of $18,196.41, incurred in total by the attorneys who represented plaintiffs in this action.  They assert that these costs are recoverable under 28 U.S.C. § 1920.  Blue Shield objects to any order authorizing payment of costs at this point, noting that the court previously stated that costs would be determined at the conclusion of the litigation, post-judgment, pursuant to the Civil Local Rules.  Moreover, Blue Shield asserts, the request for costs was not made in accordance with Local Rule 54-1, and plaintiffs are seeking to recover costs that are not recoverable under 28 U.S.C. § 1920 and Local Rule 54-3.  Blue Shield contends that only $2,423.71 of the amount requested in costs is actually recoverable.

The request for costs is DENIED, without prejudice to submission of a bill of costs

1    to the clerk post-judgment.  However, for reasons discussed below, to the extent that

2    plaintiffs are seeking any costs incurred in the case after the date that Blue Shield made

3    its Rule 68 offer (March 9, 2015), that request will be denied.

4           3.      Prejudgment interest

5          Plaintiffs seek an order awarding them prejudgment interest on the damages, up

6    to the date of the Rule 68 offer, at the rate of 15%.  They concede that the default rate is

7    the rate set under 28 U.S.C. § 1961,[1] but argue that it would be "equitable" in this case to

8    assess interest at 15% because that is the same rate Blue Shield pays to providers when

9    it has failed to properly pay or contest a claim, or when resolution of a provider appeal or

10    a member grievance results in additional payment.  Plaintiffs also assert that payment of

11    prejudgment interest at a rate of 15% is "appropriate" because Blue Shield wrongfully

12    denied their claim and they have "been denied the use of these funds for years," and

13    Blue Shield offers no explanation why the rate should be different for contested claims.

14          In opposition, Blue Shield argues that prejudgment interest in this case should be

15    calculated at the rate set in 28 U.S.C. § 1961.  Blue Shield contends that one primary

16    factor to be considered in calculating prejudgment interest in ERISA cases is whether the

17    insurer acted in bad faith or with ill will, and that here, plaintiffs concede that Blue Shield

18    did not act in bad faith or with ill will.  Thus, Blue Shield argues, unless there is

19    "substantial evidence" showing that the equities of the case require a different rate, the

20    court should calculate interest at the default rate.

21          In addition, Blue Shield asserts, the "provider connection" website from which

22    plaintiffs obtained the proposed 15% rate is inapplicable.  Blue Shield argues that the

23    amount of damages it agreed to pay to plaintiffs in this case was by no means an

24    uncontested claim, nor the result of a provider appeal or a member grievance.  Blue

25

26

27

28

United States District Court<br>Northern District of California

---

[1]  "[Prejudgment] interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  28 U.S.C. § 1961(a).  The rate for the week ending March 11, 2016 is 0.68%.  http://www.federalreserve.gov/releases/h15/current/

United States District Court
Northern District of California

1    Shield also contends that plaintiffs have provided no evidence (much less, "substantial

2    evidence") showing that the equities warrant paying interest at a higher rate than the

3    default rate.

4          "A district court may award prejudgment interest on an award of ERISA benefits at

5    its discretion." Blankenship v. Liberty Life Assur. Co. of Boston, 486 F.3d 620, 627 (9th

6    Cir. 2007).  "Prejudgment interest is an element of compensation, not a penalty."

7    Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 988 (9th Cir. 2001).  "[T]he interest

8    rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing

9    the rate of pre-judgment interest 'unless the trial judge finds, on substantial evidence, that

10   the equities of that particular case require a different rate.'"  Nelson v. EG & G Energy

11   Measurements Grp., Inc., 37 F.3d 1384, 1392 (9th Cir. 1994) (quoting Western Pac.

12   Fisheries, Inc. v. S.S. President Grant, 730 F.2d 1280, 1289 (9th Cir.1984)).

13         After the Harlick case was remanded by the Ninth Circuit, the district court

14   awarded prejudgment interest at a rate of 5%, based on the showing by plaintiffs that

15   they had paid substantial amounts in interest on home equity loans taken out to finance

16   the patient-beneficiary's residential treatment.  The court reasoned that deviating from the

17   statutory default rate allowed the plaintiffs to be compensated for the interest payments

18   incurred in funding the treatment.  However, the court declined to increase the rate to

19   account for points and fees associated with a refinancing of the principal loan, on the

20   basis that the refinancing affected the entire home loan, not just what the participant

21   borrowed to fund the treatment.  See Harlick v. Blue Shield of Calif., 2013 WL 2422900 at

22   *1-2 (N.D. Cal. June 3, 2013).

23         Here, however, apart from a vague and unsubstantiated reference in plaintiffs'

24   reply brief to plaintiffs having been "denied the use of these funds for years" because

25   Blue Shield wrongfully denied their claim, there is no suggestion that plaintiffs were

26   required to pay interest on sums borrowed to fund the residential treatment.

27         The motion to award prejudgment interest at a rate of 15% is DENIED.  Plaintiffs

28   have not met the "substantial evidence" standard for increasing the amount of

prejudgment interest above the statutory default rate.  Thus, plaintiffs will be awarded prejudgment interest at the default rate specified in 28 U.S.C. § 1961.

### 4.    Post-judgment interest

Plaintiffs seek post-judgment interest at the statutory rate.  Blue Shield does not address this issue in its opposition, and the issue does not appear to be disputed.  Accordingly, the motion is GRANTED.

### 5.    Attorney's fees

Plaintiffs seek attorney's fees in the amount of $725,801.27 in this case, which is a case involving damages of less than $80,000.00.  For the reasons set forth below, the motion for fees is GRANTED in part and DENIED in part.

In an ERISA action, fees are discretionary, not mandatory.  See 29 U.S.C. § 1132(g) ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either party").  Although a fee claimant need not be a "prevailing party" to be eligible for attorney fees under § 1132(g), he/she must have achieved "some degree of success on the merits" before the Court may award fees.  Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 245 (2010).

"[T]rivial success on the merits or a purely procedural victory" is not enough to qualify for fees under § 1132(g), but it is unnecessary for the court to engage in a lengthy inquiry as to whether the party's success was "substantial" or occurred on a "central issue."  Id. at 255.  A plan participant who prevails in an action to collect benefits under the plan "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984) (quotations omitted).  Here, plaintiffs achieved one of the stated goals of their lawsuit – to require Blue Shield to provide benefits for the residential treatment Geoffrey received at Island View.

Once a court determines that an ERISA fee claimant has achieved some degree of success on the merits, the court "must consider" the factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980), to guide its discretion under § 1132(g).

9

See Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1119, 1121 (9th

Cir. 2010).  Under Hummell, the relevant factors are

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Hummell, 634 F.2d at 453.  These factors are intended to guide the court's exercise of its

discretion, but none is "necessarily decisive," as "various permutations and combinations

can support an award of attorney fees."  Paddack v. Morris, 783 F.2d 844, 846 (9th Cir.

1986) (quoting Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th

Cir.1984)).  The Hummell factors are generally construed in favor of protecting

participants in employee benefit plans.  McElwaine v. U.S. W., Inc., 176 F.3d 1167, 1172

(9th Cir. 1999).

　　　The court finds that on balance, the Hummell factors support an award of fees in

the present case.  The first factor – the degree of Blue Shield's culpability or bad faith –

supports an award of fees, though only slightly.  Plaintiffs agree that Blue Shield did not

act in bad faith, and their only argument is that Blue Shield was "culpable" because it

owed plaintiffs a duty (paying benefits) under the Plan and failed to fulfill that duty.  While

it is true that the outcome of the Harlick decision was that under the Parity Act, an insurer

is required to pay for medically necessary residential treatment, that question was one of

first impression, and the Ninth Circuit also found that the Plan itself did not require Blue

Shield to pay for residential treatment.  Thus, to the extent that Blue Shield can be

considered "culpable" because the outcome is that it is required to pay benefits, the

degree of culpability is minimal.

　　　The second Hummell factor – the ability of Blue Shield to satisfy an award of fees

– favors an award of fees.  Plaintiffs have provided information relating to Blue Shield's

"Financials," and Blue Shield does not dispute that it has sufficient financial resources to

satisfy an award of attorney's fees.

United States District Court
Northern District of California

The third Hummell factor – whether an award of fees would deter others from acting under similar circumstances – does not clearly favor an award of fees.  This case did not involve a straightforward denial of benefits due under the terms of an ERISA Plan.  Rather, it involved the application of the Parity Act to the claim for benefits – an issue that was unresolved until the Ninth Circuit issued its decision in Harlick.  Although plaintiffs claim that an award of fees in this case would incentivize" insurers to comply with ERISA, the decision by the Ninth Circuit was not based on a failure by Blue Shield to comply with ERISA.  Moreover, the issue that was resolved – whether the Parity Act requires insurers to pay for residential treatment – is now decided, and insurers will likely comply with that ruling in the future.

The fourth Hummell factor – whether plaintiffs sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA – favors an award of fees, but again, only slightly.  Plaintiffs argue that this factor is satisfied by the fact that they sought class certification.  However, they did not seek relief on behalf of all participants and beneficiaries of the defendant Plan, and instead, sought to represent "the group of individuals and entities who have been wrongfully denied coverage for residential treatment services for mental health conditions under Blue Shield group or individual health insurance policies."  Cplt ¶ 14.  Nor did plaintiffs seek to resolve a significant legal question regarding ERISA.  The focus of their arguments was that the Parity Act required Blue Shield to pay for residential treatment services, not that Blue Shield had violated ERISA when it denied payment.

The fifth Hummell factor – the relative merits of the parties' positions – slightly favors an award of attorney's fees.  In the complaint, plaintiffs alleged that Blue Shield breached or violated the policy by refusing to pay for residential treatment.  In Harlick, the Ninth Circuit held that a similar provision in the policy at issue in that case excluded payment for residential treatment services, but that payment was required solely based on the Parity Act.  While it is now clear that California law requires payment for residential services, the issue was not entirely clear at the time the complaint was filed or at the time

1    Blue Shield prevailed on summary judgment in this case in March 2011.

2          Thus, a majority of the Hummell factors at least slightly favor an award of fees.  In

3    addition, with regard to whether there are "special circumstances" that would make an

4    award of attorney's fees unjust, Blue Shield's argument that it would be "unfair" to make it

5    pay any of plaintiffs' fees is not persuasive.  The court thus exercises its discretion in

6    favor of awarding attorney's fees to plaintiffs.

7          Having determined that an award of attorney's fees is proper, the court must

8    consider whether the fees requested by plaintiffs are reasonable.  To determine the

9    amount of fees to award in ERISA actions, the Ninth Circuit evaluates the request under

10   the "hybrid lodestar/multiplier approach" used by the Supreme Court in Hensley v.

11   Eckerhart, 461 U.S. 424 (1983).  See Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d

12   1041, 1045 (9th Cir. 2000).  Under that approach, the court first "determines the 'lodestar'

13   amount by multiplying the number of hours reasonably expended on the litigation by a

14   reasonable hourly rate."  Id.  The burden is on the party seeking the award to "submit

15   evidence supporting the hours worked and the rates claimed."  Hensley, 461 U.S. at 433.

16         Plaintiffs contend that the amount of the fees they seek is reasonable and

17   supported by the lodestar.  Blue Shield asserts that the amount requested is not

18   reasonable and should be reduced.  Blue Shield argues that the claimed billing rates are

19   excessive, and that the hours claimed should be reduced because of plaintiffs' limited

20   level of success and what they actually achieved in the litigation, and because plaintiffs

21   have billed for duplicative and unnecessary work.  Blue Shield also contends that

22   plaintiffs should receive no fees and costs for work done after Blue Shield made its Rule

23   68 offer of judgment on March 9, 2015

24              a.    Billing rate

25         In calculating the lodestar figure, the court must determine a reasonable hourly

26   rate based on the experience, skill, and reputation of the attorneys requesting fees.  See

27   Webb v. Ada Cnty., 285 F.3d 829, 840 & n.6 (9th Cir. 2002); Chalmers v. City of Los

28   Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).  As the Supreme Court has recognized,

United States District Court
Northern District of California

determining a reasonable or prevailing rate of compensation is "inherently difficult." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir. 2006); see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g (1993).

Plaintiffs seek attorney's fees at a rate of $650/hr. for work performed by their counsel in this case – Brian King (Law Office of Brian S. King in Salt Lake City), David Lilienstein (DL Law Group in San Francisco), and Robert G. Wing (Prince, Yeates & Geldzahler, and Ray Quinney & Nebeker, both of Salt Lake City), plus work performed at varying rates by certain "colleagues" of Mr. Wing (at the two law firms he worked at during the pendency of this case), plus $195/hr. for work performed by Linda Bosen, a paralegal in Mr. King's office.

Blue Shield argues that the hourly billing rate plaintiffs seek to have applied in this case is not reasonable.  The reasonable rate is ordinarily based on the rate prevalent in the relevant community – typically the community in which the district court sits.  Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995); see also Chalmers, 796 F.3d at 1210-11.  The relevant rate is that charged for "similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum, 465 U.S. at 895 n.11. "To inform and assist the district court" in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those in the community.  Id.; see also Widrig v. Apfel, 140 F.3d 1207, 1209 (9th Cir. 1998).  However, an attorney's declaration regarding the reasonableness of his or her own rate, standing alone, is insufficient to meet the fee applicant's burden.  Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987).

Mr. King and Mr. Wing, both of whom have been in practice for 30 years or more, acknowledge that their customary billing rates in Utah are significantly lower than the $650/hr. plaintiffs are requesting here.  At the commencement of this litigation in 2009,

13

Mr. King's rate was $350/hr.  In January 2011, it increased to $400/hr., and in July 2015, it increased to $450/hr., where it remained as of the time the present motion was filed. Mr. Wing's rate was $290/hr. in 2009, and it increased over the years, to $295/hr. in 2010, $300/hr. in 2011; $310/hr. in 2012; $325/hr. in 2013; $330/hr. in 2014; and, after he moved to a different law firm in April 2014, it increased to $340/hr., where it remained as of the time the motion was filed.  Billing rates are considerably lower in Utah than in the San Francisco Bay Area, but plaintiffs argue that Mr. King and Mr. Wing should be compensated at the higher rate that is customary in ERISA cases in the Bay Area.  Each of them has provided a declaration listing ERISA cases he has litigated, but neither claims to have ever previously been compensated at a rate anywhere near $650/hr. for work on an ERISA case.

Mr. Lilienstein, a San Francisco attorney who has been in practice for approximately 15 years, has filed a declaration stating that his usual billing rate is $650/hr.  He asserts that he spends the majority of his time litigating ERISA and non-ERISA group disability claims, and that he has been co-counsel on numerous ERISA class actions.  He does not claim to have ever been awarded $650/hr. in an ERISA case, but asserts that other attorneys in this district have been, and that his current rate of $650/hr. is "consistent with the prevailing rate for San Francisco Bay Area ERISA attorneys."

Plaintiffs have submitted four declarations previously filed in support of a request for attorney's fees in another ERISA case ("James") in this district.  The first declaration is dated July 7, 2014.  The declarant did not represent the plaintiff in that case, but stated that he was professionally acquainted with the plaintiff's counsel (who practices in the Bay Area), and supported his request for payment at $675/hr.  The second declaration, dated July 17, 2014, is by an attorney's fees "specialist," who asserted that, based on the experience of the plaintiff's counsel and the prevailing rates at numerous Bay Area law firms, the claimed rate of $675/hr. was a reasonable rate.  The third declaration is by a paralegal who worked for the plaintiff's counsel, and who states that her usual billing rate

United States District Court
Northern District of California

14

is $195/hr.  The fourth declaration, dated July 29, 2014, is by a trial consultant with a nationwide practice, who opined that ERISA cases are at least as difficult to litigate as other types of cases.  Apart from the four declarations from the <u>James</u> case, plaintiffs have also filed a declaration dated August 19, 2015, by an Illinois ERISA attorney who states that his current billing rate is $600/hr.  He also states that he is acquainted with Mr. King and Mr. Lilienstein, and their experience and skill as ERISA attorneys.  He asserts that Mr. Lilienstein's claimed rate of $650/hr. is in line with prevailing rates in the Bay Area, and that Mr. King's rate should be even higher, given his additional years of experience.  Finally, plaintiffs cite two relatively recent decisions from this judicial district, in which the courts found $650/hr. to be a reasonable rate for ERISA counsel located in this district.

The court finds that $650/hr. is a reasonable rate for Mr. Lilienstein, who is an experienced ERISA litigator who practices in the Bay Area and has an office in San Francisco.  However, plaintiffs have not established that Mr. King and Mr. Wing, both of whom live and practice in Utah and whose usual billing rates are significantly less than $650/hr., are entitled to be compensated at a rate of $650/hr. simply by virtue of the fact that the case was filed in this judicial district.  Clearly, apart from a few court appearances, the bulk of the work performed by Mr. King and Mr. Wing on this case was performed in Utah.  Attorneys who live and practice in areas with lower billing rates, and then fly to Northern California for court appearances, cannot expect to be compensated at Bay Area rates, particularly where adequate and experienced local counsel has also been retained and has taken an active role in the case.  The court finds that Mr. King's time should be billed at his current rate of $450/hr., and that Mr. Wing's time should be billed at his current rate of $340/hr.

In addition, plaintiffs are seeking fees for work performed by certain "colleagues" of Mr. Wing at the two Utah firms, at their Utah rates, which according to Mr. Wing "rang[ed] from $130 per hour to $335 per hour."  According to the attached billing statements, the rate at the Prince, Yeates firm for Callie Buys Rogers started at $190/hr. and increased to

15

$200/hr., and the rate for J.B. Bradshaw was $130/hr.  The rate at the Ray Quinney firm for J. Korb ("Of Counsel") was $260/hr., the rate for J. Parrish ("Of Counsel") was $240/hr., the rate for S. Tingley ("Shareholder") was $325/hr., and the rate for B. Wride ("Shareholder") was $335/hr.

However, other than referring to six these individuals as Mr. Wing's "colleagues," plaintiffs have provided no information regarding their experience, qualifications, years in practice, or areas of specialization.  Under Civil Local Rule 54-5, "[u]nless otherwise ordered, [a] motion for attorney fees must be supported by declarations or affidavits" setting forth information including "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of the value of the services."  Civ. L.R. 54-5(b).  Because plaintiffs have failed to comply with the requirements of the local rule with regard to the work performed by these six attorneys, and have failed to provide any evidence supporting the requested billing rates, including declarations or information from which the court can glean any details of their reputation and experience or the quality of their services on behalf of plaintiffs, or the complexity of the work performed – or any explanation as to why those six attorneys were needed, given the three attorneys and one paralegal who were already billing on the case – the court will not approve the payment of fees for the work performed by Mr. Wing's "colleagues" in Utah.

Finally, plaintiffs seek fees for the work performed by Mr. King's paralegal, Linda Bosun.  Ms. Bosun has provided a declaration in which she states that at the commencement of the litigation, her rate was $125/hr., that it increased to $150/hr. as of January 1, 2011, and that as of July 1, 2015, it had increased to $175/hr.  Ms. Bosun states that based on "national standards, the nature of Mr. King's practice, and the specialized knowledge involved in this area of the law," these rates are reasonable for her work.  In their motion, however, plaintiffs assert that they are seeking fees for Ms. Bosun's work during the entirety of the case at a rate of $195/hr.

Plaintiffs' only support for this request is a July 2014 declaration filed in another

16

1  case by an individual who was at the time employed as a paralegal in a law firm located

2  in Alameda County, California.  She states that her billing rate at that time was $195/hr.,

3  and that she believes that her rate is "toward the low end" based on her review of

4  unidentified "orders" that set paralegal fees and "paralegal fee surveys."  Plaintiffs have

5  not established that fees for a paralegal in a Utah law firm should be set at $195/hr. (or

6  even at $175/hr.) for the period from 2009 to 2015.  Thus, the court finds that fees for Ms.

7  Bosun's work should be set at her usual billing rate, as indicated in her declaration and

8  the attached time records.

9              b.    Hours billed

10             Having determined the appropriate billing rates, the court now considers whether

11  the hours expended were reasonable.  Plaintiffs, as prevailing parties, have "the burden

12  of submitting detailed time records justifying the hours claimed to have been expended."

13  In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994)

14  (citations and quotations omitted); see also Fox v. Vice, 131 S.Ct. 2205, 2216 (2011) (fee

15  applicant must submit appropriate documentation to establish entitlement to award, but

16  "trial courts need not, and indeed should not, become green-eyeshade accountants")

17  (citations omitted); Robinson v. Plourde, 717 F.Supp.2d 1092, 1098 (D. Haw. 2010).

18             Further, the court has an "independent duty to review the submitted itemized log of

19  hours to determine the reasonableness of hours requested in each case."  Irwin v.

20  Astrue, 2012 WL 707090, at *1 (D.Or. Mar. 5, 2012) (citing Sorenson v. Mink, 239 F.3d

21  1140, 1145 (9th Cir. 2001)); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 558

22  (2010) (court must provide "reasonably specific explanation for all aspects of a fee

23  determination").  Thus, even when the opposing party does not object to a motion for

24  attorney's fees, the court must independently review the petition for reasonableness and

25  give a "concise but clear explanation of its reasons for the fee award."  Cunningham v.

26  Cnty of L.A., 879 F.2d 481, 484 (9th Cir.1988) (quoting Hensley, 461 U.S. at 437).

27             i.    Total hours claimed

28             Plaintiffs assert that Mr. King spent a total of 871.5 hours on the case, but that he

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1   has deducted 207.2 hours for work on issues relating to class certification, leaving 664.3

2   hours spent on issues relating to liability.  They contend that Mr. Wing spent 234.4 hours

3   on liability-related issues, and 278.3 hours on issues relating to class certification.  They

4   assert that Mr. Lilienstein spent a total of 179.8 hours on the case, but that he has

5   deducted 29.1 hours for work on the issue of class certification, leaving a total of 150.7

6   hours spent on issues relating to liability and damages.  Finally, plaintiffs assert that Mr.

7   King's paralegal, Linda Bosun, spent 97.70 hours on the case, exclusive of time spent on

8   class certification issues.

9        Courts must exclude from the fee calculation hours that are not adequately

10  documented, or which represent overstaffing of cases or failure to exercise sound billing

11  judgment.  See Hensley, 461 U.S. at 433.  That is, the court should exclude from its

12  lodestar calculation hours that were not reasonably expended because they were

13  "excessive, redundant, or otherwise unnecessary."  Id.  In addition, where, as here, the

14  plaintiff is seeking fees, "the extent of [the] plaintiff's success is a crucial factor in

15  determining the proper amount of an award of attorney's fees."  Id. at 440.

16       Blue Shield makes a number of objections to the number of hours claimed in this

17  motion, arguing that plaintiffs' level of success in this litigation was limited, and that they

18  should not be permitted to claim fees for hours spent on issues on which they did prevail,

19  such as class certification; that plaintiffs' retention of three separate law firms resulted in

20  excessive, duplicative, and otherwise unnecessary fees; that plaintiffs have failed to

21  provide adequate documentation of Mr. Wing's hours and that the time entries are overly

22  vague; and that plaintiffs have improperly billed their attorneys' travel time.

23                    ii.    Limited success

24       Blue Shield contends that the hours claimed by plaintiffs are excessive in light of

25  their limited success in this litigation.  The court agrees, but finds it difficult to quantify the

26  appropriate reduction.  Part of the benefit plaintiffs sought in this case was to recoup the

27  amount they had spent for residential treatment, and in that they succeeded, though not

28  entirely or even primarily through the efforts of their attorneys, as they prevailed on the

United States District Court
Northern District of California

1   Parity Act claim as a result of the Ninth Circuit's decision in the <u>Harlick</u> case.  On the

2   other hand, plaintiffs did not succeed at having a class certified; did not succeed on their

3   claim that the denial of benefits violated or breached the policy; did not succeed on their

4   attempt to present a claim for inconsistent claims adjudication; and did not succeed on

5   their request for declaratory and injunctive relief.

6                                   iii.        Hours for work on class-related issues

7              In their declarations, counsel all state that they have deducted hours spent

8   exclusively on class-related or class certification issues.  However, they do not indicate

9   which hours they have excluded.  Nor do they explain whether they have excluded all

10  work on class-related issues, including discovery, or whether they have excluded only the

11  hours for work on the class certification motions.  In the case of Mr. Wing, this problem is

12  exacerbated by the vague and overly general nature of the time entries, which make it

13  largely impossible to determine what he is billing for.

14             Thus, there appears to be no dispute that the time entries attached to the motion

15  reflect hours spent on class-related issues, and that those hours should not be included

16  as part of the compensable hours.  As discussed below in the analysis, the court has

17  attempted to determine exactly how many hours were actually spent on class-related

18  issues.

19                                   iv.        Excessive, duplicative, and otherwise unnecessary hours

20             Blue Shield argues generally that the claimed fee amount is unreasonable

21  because plaintiffs retained three separate law firms to work on the case, and many of the

22  hours claimed reflect duplicative work.  Plaintiffs contend that this argument should be

23  rejected because defendants have not provided specific examples of duplicative work.

24  The court notes, however, that it is not Blue Shield's burden to establish the problems

25  with plaintiffs' time-sheets.  Rather, as noted above, plaintiffs have "the burden of

26  submitting detailed time records justifying the hours claimed to have been expended."

27  <u>See</u> <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d at 1305.

28             Generally, a court should not award fees for work performed that was redundant or

United States District Court
Northern District of California

1   unnecessarily duplicative.  See Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th

2   Cir. 2008).  While litigation often requires the participation of multiple attorneys, see Davis

3   v. City & Cnty. of San Francisco, 976 F.2d 1536, 1544 (9th Cir. 1992), vacated in part on

4   other grounds, 984 F.2d 345 (9th Cir. 1993), "overstaffing cases inefficiently is common,

5   and district courts are therefore encouraged to scrutinize fee petitions for duplicative

6   billing when multiple lawyers seek fees."  Schlacher v. Law Offices of Phillip J. Rotche &

7   Assocs., 574 F.3d 852, 858 (7th Cir. 2009).  In general, billing is redundant where two

8   attorneys perform a task that could just as easily be performed by one attorney in less

9   time than the two attorneys billed together.  See, e.g., Seven Signatures Gen. P'ship v.

10  Irongate Azrep BW LLC, 871 F.Supp. 2d 1040, 1055 (D. Haw. 2012).

11         In exercising its independent duty to review the time entries and determine the

12  reasonableness of the hours claimed, the court finds that there was duplicative work

13  performed on various aspects of the case.  For example, on June 30, 2009,

14  approximately seven weeks after the complaint was filed, Blue Shield filed a 10-page

15  motion to dismiss for failure to state a claim.[2]  Between June 30, 2009 and August 27,

16  2009, Mr. King, Mr. Wing, and Mr. Lilienstein billed a total of 94.2 hours of attorney time

17  and 6.3 hours of paralegal time in connection with opposing the motion, including time

18  spent reviewing the motion, conducting legal research, discussing the motion, drafting the

19  20-page opposition brief, editing and revising the opposition brief, preparing for the

20  hearing, and reviewing the order after the hearing.

21         Mr. King billed for reviewing the motion to dismiss, drafting the opposition,

22  preparing for the hearing, and reviewing the order denying the motion.  He also billed for

23  numerous emails and phone conferences with Mr. Wing and Mr. Lilienstein.  Mr. Wing

24  billed for reviewing the motion to dismiss, and reviewing the order denying the motion.

25  Mr. Lilienstein billed for reviewing the motion to dismiss, researching the issues raised in

26

27  _____

28  [2]   The memorandum of points and authorities was ten pages long.  Blue Shield also filed
a declaration attaching copies of the Plan at issue, and a request for judicial notice
attaching documents from the California Department of Managed Health Care.

United States District Court
Northern District of California

the motion, drafting the opposition, preparing for the hearing, and reviewing the order denying the motion.  In addition, both Mr. King and Mr. Lilienstein appeared at the hearing, which lasted less than 30 minutes, although only Mr. King spoke.

Similarly, it appears that there was duplication of effort on Blue Shield's "early" motion for summary judgment, although it is a little less easy to summarize.  The schedule for briefing and hearing was modified a number of times, and Blue Shield finally filed the motion on April 30, 2010.  Between that date and the date plaintiffs filed their opposition more than six months later (November 12, 2010), the briefing schedule and hearing date were continued numerous times, primarily at the plaintiffs' request.  Much of the interim time was taken up with discovery-related matters (motions to compel, a Rule 56(f) motion, conducting of discovery, reviewing documents produced by Blue Shield).

Mr. King's time sheets reflect 50.9 hours spent specifically for work on the opposition and declarations, and on reviewing and discussing the reply; and 15.3 hours for what appears to be legal research, for a total of 66.2 hours.  In addition, Mr. King claims .3 hours (18 minutes) spent reviewing a 3-line order from the court continuing the summary judgment motion hearing date; 6.9 hours spent preparing for oral argument for the summary judgment motion; 4.2 hours spent traveling from Salt Lake City; 1.9 hours spent in the court appearance; and 7.6 hours spent traveling back to Salt Lake City – a further total of 20.9 hours.  Altogether, he claims 87.3 hours for this work connected with opposing Blue Shield's motion, which includes numerous emails and phone conferences with his co-counsel.

Mr. Wing claims 12.7 hours for work on the opposition to the summary judgment motion, including time spent on drafting the opposition, and on numerous emails and telephone conferences with Mr. King and Mr. Lilienstein.  Mr. Lilienstein claims 20.4 hours working on the opposition to the summary judgment motion; 5.6 hours preparing for oral argument; 3.6 hours traveling (presumably from his San Francisco office) to the Oakland courthouse and for attendance at the hearing; and 2 hours to review the order on the day it was issued. Together, Mr. Wing and Mr. Lilienstein claim 44.3 hours for

work on the summary judgment.

Thus, taken all together, plaintiffs are seeking compensation for 131.6 hours spent by three attorneys on opposing Blue Shield's early motion for summary judgment, which does not include any of the time spent on discovery, the Rule 56(f) motion, or motions for continuances for briefing and hearings.

v.      Vague time entries

Blue Shield contends that Mr. Wing's entries are mostly vague and/or block-billed, such that it cannot be determined what the time was spent on.  Blue Shield contends that plaintiffs have failed to meet their burden of providing adequate documentation with respect to Mr. Wing.  Mr. Wing's time sheets are replete with entries such as "review memo," "review email," review file," "review documents," revise memorandum," revise memo," "review correspondence," "research," "prepare email," and "prepare for deposition," with no identification of the particular memo, email, file, documents, correspondence, or research he was working on, and also include references to nonspecific phone calls, meetings and conferences, without any explanatory details.

While it is possible in some instances for the court to guess what tasks the entries refer to, based on a comparison of Mr. Wing's time entries with those of the other attorneys and the docket entries, the vagueness of the entries makes it difficult to arrive at an accurate total.  Thus, in this regard, plaintiffs have not met their burden of substantiating the hours claimed.

vi.      Travel time

Blue Shield contends that plaintiffs have improperly billed for Mr. King's and Mr. Wing's travel time, and that fees for travel time are not recoverable.  The court may in its discretion reduce fees owed related to travel, although it may also award travel time in full.  See Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc., 2013 WL 843036 at *7 (N.D. Cal. Mar. 6, 2013).  The central inquiry is whether the time sought is reasonable.  Id.

Plaintiffs are seeking fees for a total of 96.8 hours for Mr. King's travel time, as follows:  5.3 hours on August 8, 2009, for "travel from SFO to SLC;" 8.6 hours on June 2,

United States District Court
Northern District of California

2010, for "travel to and from SFO re: Motion to Compel;" 8.6 hours on October 26, 2010, for "travel to SFO" and 5.0 hours on October 27, 2010, for "travel from SFO to SLC;" 6.4 hours on December 21, 2010, for "Travel for court appearance for hearing;" 7.2 hours on December 22, 2010, for "travel to SLC from OAK"; and 4.2 hours on February 15, 2011, for "Travel to Oakland for hearing;" 7.6 hours on February 16, 2011, for "travel back to Utah;" 6.9 hours on May 31, 2013, for "Travel to and from S.F. for meet and confer efforts for class discovery in case;" 4.6 hours on March 24, 2014, for "Travel to LA for client depositions" and 5.7 hours on March 25, 2015, for "travel home;" 4.9 hours on July 8, 2014, for "travel to Oakland for hearing" and 6.5 hours on July 9, 2014, for "travel from Oakland to Salt Lake;" and 15.30 hours on January 18, 2015, for "Travel to and from Burbank for meeting with clients."

In addition, plaintiffs are seeking fees for 31.5 hours of Mr. Wing's travel time, as follows:  6.8 hours on February 10, 2014, for "Travel;" 8.5 hours on February 11, 2014, for "travel;" 10.10 hours on July 8, 2014, for "Travel to Oakland;" and 6.10 hours on July 9, 2014, "Travel from Oakland."

The court finds that compensation for time required for Mr. King and Mr. Wing to travel to California from Utah, and back, is unreasonable, given that plaintiffs had retained the services of Mr. Lilienstein, a fully qualified local ERISA attorney located in San Francisco.

c.      Fees and costs incurred after Rule 68 offer of judgment

As indicated above, Blue Shield served plaintiffs with a Rule 68 offer of judgment on March 9, 2015.  The offer, which plaintiffs did not accept, provided that judgment would be entered against Blue Shield and in favor of plaintiffs in the amount of $107,721.79 which would include prejudgment interest.  The accompanying cover letter explained that the $107.721.79 comprised damages in the sum of $79,954 plus prejudgment interest in the amount of $27,767.79, and plaintiffs would also be "entitled to any reasonable recoverable costs of suit and attorneys' fees accrued through the date of this offer as determined by the Court."  Blue Shield contends that all fees and costs

1    incurred after plaintiffs failed to accept the Rule 68 offer of judgment should be

2    disallowed.

3         "At least fourteen days before the date set for trial," a defendant may serve an

4    opposing party with an offer of judgment "on specified terms, with the costs then

5    accrued."  Fed. R. Civ. P. 68(a).  If this offer is accepted by written notice within fourteen

6    days of service, the parties may file notice of the offer and its acceptance, and "[t]he clerk

7    must then enter judgment."  Id.  If the offer is not accepted and the offeree's recovery "is

8    not more favorable than the unaccepted offer," the offeree bears the risk of paying "the

9    costs incurred after the offer was made."  Fed. R. Civ. P. 68(d).

10        The "plain purpose" of Rule 68 "is to encourage settlement and avoid litigation."

11   Marek v. Chesny, 473 U.S. 1, 5 (1985).  The "critical feature" of Rule 68's fee-shifting

12   provision is "that the offer be one that allows judgment to be taken against the defendant

13   for both the damages caused by the challenged conduct and the costs then accrued.  Id.

14   at 6.  "The requirements for a valid Rule 68 offer are simple."  Herrington v. Cnty. of

15   Sonoma, 12 F.3d 901, 907 (9th Cir. 1993).  A Rule 68 offer of judgment must (1) specify

16   a definite sum for which judgment may be entered, (2) be unconditional, and (3) include

17   costs then accrued.  See id.

18        Where the underlying law entitles the prevailing party to seek attorney's fees "as

19   part of costs," a Rule 68 offer may include the amount for attorney's fees (if this inclusion

20   is expressly stated) or may contemplate that the court will entertain requests for

21   attorney's fees after acceptance.  See Nusom v. Comh Woodburn, Inc., 122 F.3d 830,

22   834 (9th Cir. 1997).  The term "costs" in Rule 68 "was intended to refer to all costs

23   properly awardable under the relevant substantive statute or other authority.  Marek, 473

24   U.S. at 9.  For example, Congress explicitly included attorney's fees as "costs" available

25   to a plaintiff in a § 1983 suit, and thus such fees are subject to the cost-shifting provision

26   of Rule 68.  Id. at 9-11; see also Family PAC v. Ferguson, 745 F.3d 1261, 1264-65 (9th

27   Cir. 2014).

28        In contrast, however, ERISA's civil enforcement statute, 29 U.S.C. § 1132,

United States District Court
Northern District of California

1  provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or

2  fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of

3  action to either party."  29 U.S.C. § 1132(g)(1).  Thus, because § 1132(g)(1) does not

4  provide for attorney's fees "as costs," the consequence of plaintiffs' failure to accept Blue

5  Shield's Rule 68 offer is that they cannot recover any costs incurred after the date of the

6  offer.  However, attorney's fees after the date of the offer are not disallowed.

7  C.    Analysis

8        Mr. King's hours total 871.9.  He says he spent 207.2 hours working on class-

9  related issues, and that the remaining 664.3 hours were devoted to work on issues

10  relating to liability.  Mr. Wing's hours total 512.70.  He says he deducted 278.3 hours for

11  work spent on class issues, and spent 234.4 hours on issues relating to liability and

12  damages.  Mr. Lilienstein's hours total 179.8.  He says he deducted 29.1 hours for work

13  spent on class certification issues, leaving 150.7 compensable hours.

14        The court has subtracted from the King and Wing hours the amounts claimed for

15  travel exclusive of travel connected with class-related issues (so as not to deduct the

16  same hours for travel and for work on class-related issues).  These are 78.8 hours for Mr.

17  King, and 15.3 hours for Mr. Wing.  That leaves 585.5 hours for Mr. King, 219.1 hours for

18  Mr. Wing, and 150.7 hours for Mr. Lilienstein.

19        The court also has deducted time spent on class-related issues.  This includes

20  work on class discovery, research into class issues, and work on class certification

21  motions.  There are three periods during the litigation when it appears work was being

22  done on class-related issues.

23        First is the period of discovery prior to the March 3, 2011, order granting Blue

24  Shield's motion for summary judgment.  During this time, plaintiffs were involved in both

25  class and merits discovery, including propounding discovery requests and filing and

26  litigating motions to compel.  Blue Shield has provided a declaration by its counsel Craig

27  Bloomgarden which discusses discovery propounded during this first period of discovery

28  (and attaches copies of discovery requests which appear to have involved both class and

United States District Court
Northern District of California

1   merits discovery).  However, it is not possible for the court to segregate out the time

2   spent on class-related discovery from the time spent on merits discovery.

3       The second period extends from the issuance of the mandate by the Ninth Circuit

4   on February 14, 2013, until the August 11, 2014 order denying plaintiffs' motion for class

5   certification.  All discovery during this period appears to have been directed at class-

6   related issues.  The joint CMC statement filed by the parties on March 14, 2013 proposed

7   a discovery schedule and dates for the briefing of the motion for class certification.  After

8   the date for the CMC was continued at the parties' request, to accommodate plaintiffs'

9   counsel's schedule, they filed another joint CMC statement on April 18, 2013, proposing

10  new dates for completion of "[d]iscovery relevant to certification of the proposed class,"

11  plus dates for the briefing of the motion for class certification.  At the April 25, 2013 CMC,

12  the court directed the parties to meet and confer regarding discovery and the scope and

13  definition of the proposed class, and set a date for a further CMC.  In their joint CMC

14  statement filed August 15, 2013, the parties proposed new dates for completion of

15  discovery and briefing of the motion for class certification.  (The discovery and briefing

16  dates were modified a further four times before plaintiffs filed their motion on May 2,

17  2014.)

18      In short, there is nothing in the record indicating that the parties were working on

19  any issues other than the pending motion for class certification during this period.

20  Moreover, Blue Shield has provided (attached to the Bloomgarden Declaration) copies of

21  plaintiffs' interrogatories and requests for production of documents served on June 28,

22  2013, and their notice of Rule 30(b)(6) deposition served on December 6, 2013 – none of

23  which has any relevance to plaintiffs' individual claims.

24      The third period extends from the denial of class certification on August 11, 2014

25  until the June 22, 2015 order denying plaintiffs' motion for leave to file a motion for

26  reconsideration of the order denying class certification.  The Bloomgarden Declaration

27  also attaches copies of interrogatories, requests for admission, and requests for

28  production of documents propounded after class certification was denied, none of which

United States District Court
Northern District of California

had any relevance to plaintiffs' individual claims.

The court has made an effort to calculate the number of hours spent on class-related issues during the second and third periods, and has compared those with the number of hours each attorney claims to have deducted. The amount deducted by Mr. King (207.2) appears to be slightly more than the amount the court was able to calculate from the time sheets. Thus, no deductions will be made from his hours for class-related work during the second and third periods.

The amount deducted by Mr. Wing (278.3) is less than the amount the court has calculated (321.5) for what appears to be work on class-related issues during the second and third periods. Based on the court's review of the docket entries and the time entries for other counsel, plus Blue Shield's submissions, the court finds that, with a few exceptions, Mr. Wing's time entries for May 9, 2013 through February 10, 2014 (Prince, Yeates); and Mr. Wing's time entries for April 3, 2014, through August 27, 2014, December 11, 2014, through January 31, 2014, February 23, 2014, through March 9, 2015, and March 16, 2015, through June 8, 2015 (Ray Quinney) reflect work done on class-related issues, which is not compensable. Thus, the court deducts an additional 43.2 hours from Mr. Wing's compensable hours.

The amount deducted by Mr. Lilienstein (29.1) is less than the amount the court has calculated (49.3) for what appears to be work on class-related issues during the second and third periods. Based on the court's review of the docket entries and the time entries for other counsel, plus Blue Shield's submissions, the court finds that, with a few exceptions, Mr. Lilienstein's time entries for March 11, 2013, through August 12, 2014, and the time entries for March 25, 2015, through April 20, 2015, reflect work done on class-related issues, which is not compensable. Thus, the court deducts an additional 20.2 hours from Mr. Lilienstein's compensable hours.

Accordingly, Mr. King's hours stand at 585.5; Mr. Wing's hours stand at 175.9; and Mr. Lilienstein's hours stand at 130.5.

Finally, the court subtracts 10% for duplicative work from each total. See Moreno,

534 F.3d at 1112.  In addition, the court subtracts a further 10% for limited success achieved in the litigation; for work performed on class-related discovery during the first period, as discussed above; and for vague and nonspecific time entries.

The resulting totals are 468.4 hours for Mr. King; 140.72 hours for Mr. Wing; and 104.4 hours for Mr. Lilienstein.  Multiplied by the applicable billing rates, the attorney's fees to be awarded are $210,780 for Mr. King (468.4 x $450/hr.), $47,844.80 for Mr. Wing (140.72 x $340/hr.), and $67,860 for Mr. Lilienstein (104.4 x $650/hr.).  In addition, the court awards $12,813.27 for the work of Ms. Bosun, Mr. King's paralegal, calculated at her billing rates throughout the litigation, in accordance with her declaration.

## CONCLUSION

In according with the foregoing, the motion is GRANTED as to the amount of damages; DENIED as to the request for costs, without prejudice to submitting the costs post-judgment in a proper cost bill (except for costs incurred after March 9, 2015); DENIED as to the request for prejudgment interest at a rate of 15% but GRANTED as to the request for prejudgment interest and post-judgment interest at the statutory rate; and GRANTED in part and DENIED in part as to the amount of the attorney's fees.  The total amount of attorney's fees to be awarded is $326,484.80, plus $12,813.27 for paralegal fees, for a total of $339,298.07.

**IT IS SO ORDERED.**

Dated:  March 17, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge